THE PEOPLE OF THE STATE OF NEBRASKA, EX REL., CHARLES H. GERE AND OTHERS, PLAINTIFFS IN ERROR, v. JOHN J. GOSPER, SECRETARY OF STATE, JEFFERSON B. WESTON, AUDITOR, AND HENRY A. KOENIG, TREASURER, DEFENDANTS IN ERROR.

**Contract**: CONSTRUCTION OF. In the construction of a contract, the acts to be performed under it and the manner of performance may be considered; and such a construction should be adopted as will give effect to the provisions which carry out the evident intent of the contract; and the whole contract should be considered in determining the meaning of any or all of its parts.

————: PUBLIC PRINTING. The contractors for public printing agreed, by the terms of their contract, to furnish "paper, *super royal, forty pounds* to the ream; sheets folded *octavo* (*four times*); and sheets stitched" for a certain price, and guaranteed that the materials furnished should be of full weight and quality. The law, under which the contract was let, provided that the volumes of laws should be printed in "*royal octavo form,*" and that the work done should be equal in quality to certain specimens kept by the secretary of state. In an action brought by the contractors to recover compensation for the printing of a number of volumes of laws, where the paper furnished was of the kind known as *royal*, in sheets 19 by 24 inches in size, but weighing only *twenty* pounds to the ream, *it was held,* that a compliance with the terms of the contract required paper 24 by 38 inches in size weighing *forty* pounds to the ream, and should contain sixteen leaves and thirty-two pages of printed matter to the sheet, printed on both sides; and that each sheet for folding and stitching should contain sixteen pages.

The People, ex rel., v. Gosper, et al.

**Practice :** ADMISSIONS IN PLEADING. The plaintiff asserted a claim for an allowance for waste attending public printing, and the defendant admitted that an allowance was due but not to the extent claimed; *held*, that it was error for the court to reject all claim for allowance. It should have found, upon this claim, for the plaintiff, at least to the extent admitted by the pleadings.

THIS was an application for a mandamus brought in the district court for Lancaster county, by the relators, more familiarly known as the State Journal Printing and Publishing Company, of Lincoln, Nebraska, to compel the defendants to audit and allow a certain account for printing the local laws of the Ninth Session of the Legislature, printed by the relators under a contract with the State, and in pursuance of the provisions of an act entitled " An act to provide for the publication of the General Statutes of Nebraska," approved February 18, 1873.   The section of that act directing the publication of the local laws of the session, is as follows:

" SEC. 10.   The laws passed at this session of a private, local, and temporary nature, shall be printed and published in pamphlet form, under direction of the secretary of state, in a separate volume from the General Statutes herein provided for.   Five hundred copies of said laws shall be printed, and one copy of the same sent to each member of the present legislature, and five copies to each county in the state."   *General Statutes*, 1085.

Section seven of the act to provide for state printing is as follows:

" SEC. 7.   The laws shall be printed in *royal octavo form*, on good small pica type, the pages to be of the same size and form as those in the laws of the tenth session of the territorial legislature of Nebraska, with similar marginal notes, and index to the general laws." *General Statutes*, 517.

Section fifteen of the act is as follows:

" SEC. 15.   The secretary of state shall keep in his

office, for inspection, a specimen of each kind, style, and quality of the work required to be done, and material to be used in the several cases; and the work done or material used shall in all cases be equal in quality to the specimens so kept by the secretary of state."

The relators alleged in their petition that they were awarded the contract for state printing, on the 6th day of December, 1872, for the period of two years; and that the same was awarded in separate contracts corresponding to the seven several and respective classes set forth in the advertisement for bids, and in accordance with the provisions of an act entitled "An act to provide for state printing," approved June 18, 1867. *General Statutes*, 515.

The contract under classes four, six, and seven, under which the relators claimed compensation in this case, is as follows:

### CLASS 4.

44 cents per thousand ems long primer composition.

35½ cents per quire paper, *super royal, forty lbs. to ream*.

4 cents per quire, twenty-four impressions, press work.

### CLASS 6.

25 cents per one hundred sheets of flat cap, one fold.

20 cents per one hundred sheets flat cap, stitched.

$1.70 per one hundred paper covers for octavo pamphlets, including composition, paper, and press work.

15 cents per one hundred covers put on such pamphlets.

17 cents per one hundred sheets *folded octavo, (four times).*

### CLASS 7.

18 cents per one hundred sheets folded octavo.

$1.80 per one hundred paper covers for laws and journals, inclusive of paper, composition, and press work.

After setting forth the above facts, and alleging that they had fully complied with the terms of their contract, and had printed and delivered to the secretary of state the five hundred copies of the local laws required by the act above referred to, the relators further allege in their petition, as follows:

" And your relators also show that a sheet of octavo form, or royal octavo form, is one which will contain eight leaves or sixteen pages; that when paper is printed in royal octavo form it is necessary to cut each sheet in two parts in the center, before the same can be folded and stitched, and it is the proper legal and universal rule to count in and for folding and stitching, each of the pieces so made as a sheet of paper; that an impression of press-work is eight printed pages; and that it is usual, legal and reasonable to allow ten per centum for wastage on all items of work and material performed and furnished, where a contractor undertakes to do a piece of work for so much per item of work and materials furnished, and not for a fixed price in gross by the job. And your relators also show that in their account for the printing of said five hundred copies of local laws, they have charged for the several items of work and materials therein mentioned as hereinbefore claimed to be correct, to-wit: sixteen pages to the sheet of paper, and for folding, stitching, and impressions of press work eight pages to the sheet of paper, and ten per centum on each of the several items mentioned in said account, for wastage, and nothing more.

That on the 12th day of September, 1873, there was due and payable to your relators for the same work and materials, as shown in said account, the following sums of money, viz: For composition, one hundred and sixty-five dollars and thirty-three cents; for press work, sixteen dollars and sixty cents; for paper furnished, sixty-nine dollars and twenty-five cents; for paper covers, nine dollars and thirty-five cents; for putting on said covers,

eighty-two cents; for folding, fifteen dollars and eighty-nine cents; for stitching, eighteen dollars and seventeen cents; making a total sum of two hundred dollars and ninety-four cents. And your relators further show that inasmuch as they have complied with the terms of their said contract, the condition of their bond, and the provisions and requirements of the law, in respect of said work and materials, it is the duty of John J. Gosper, Secretary of State, Jefferson B. Weston, Auditor, and Henry A. Koenig, Treasurer, to examine the said account and vouchers, and correct all errors and overcharges therein, and make the just and proper deductions for the same; and after said account shall have been so examined by said officers, and all errors and overcharges corrected and the just and proper deductions made therefor, it is their duty to certify the same to be correct; and when such account shall have been examined, audited and certified as aforesaid, it is the duty of the auditor upon presentation thereof, to draw his warrant on the state treasurer for the amount thereof, payable out of any moneys in the treasury appropriated for that purpose.

And your relators further show, that under and by virtue of an act of the Legislature, approved February, 27, 1873, entitled "an Act making appropriations for current expenses for the years 1873 and 1874," the sum of ten thousand dollars was appropriated for the printing of the laws and journals, exclusive of the General Statutes, and that no part of said sum has yet been expended or paid out, except the sum of two hundred and twenty dollars and seventy-four cents paid to your relators as hereinafter mentioned, and the balance thereof, considerably exceeding nine thousand dollars, still remains in the treasury. And your relators also show, that including ten per centum for wastage on the several items of work and material mentioned, your relators, in doing and performing said work, performed 375,755 ems of composition,

390 quires of 24 impressions of press work, and furnished 195 quires of paper, and 550 paper covers, and put on said covers and folded and stitched 9350 sheets, counting the said work and materials as above claimed to be correct; yet your relators show, that the said officers, in the auditing and examining of said account, estimated the paper furnished for said work at sixteen leaves or thirty-two pages to the sheet, royal octavo, and folding and stitching at sixteen pages or eight leaves to the sheet, and insisted upon allowing and paying for those items at that rate, and no more, making in that way a difference of one-half of those items against your relators, and they refuse to correct their said estimates, although repeatedly requested so to do; and they also refused to allow your relators ten per centum for wastage upon the said items, but on the contrary allowed two per centum for wastage upon the number of quires of press work performed as aforesaid, and upon the number of quires of paper allowed and counted by them as aforesaid. And your relators also show that the said work as allowed and estimated by said officers, came to two hundred and twenty dollars and seventy-four cents, and the relators have been paid that sum, but there is still due them for the said work and material the further sum of seventy-three dollars and twenty cents.    *    *    *    Wherefore relators pray that a writ of mandamus may issue against the said John J. Gosper, Secretary of State, Jefferson B. Weston, Auditor, and Henry A. Koenig, Treasurer, commanding them to audit, examine and certify the said account of your relators, and in so auditing and examining the said account, to estimate the paper furnished for said work at eight leaves or sixteen pages to the sheet royal octavo, and the folding and stitching at four leaves or eight pages to the sheet, and allow your relators ten per centum for wastage on the several items in said account mentioned."

The People, ex rel., v. Gosper, et al.

The respondents answered admitting the contract of the relators to be as above stated under classes four, six, and seven thereof, and then alleged as follows:

"And respondents further say that the ordinary and common book paper weighing forty pounds to the ream, and of suitable size to fold and use without waste, for making a book of the form, style, and kind, known in trade as a super royal octavo book, contains twenty quires and no more, of twenty-four sheets each quire, each sheet thereof being about 24 by 38 inches in size, and that each sheet folds into thirty-two pages, all of the size and description required by the terms of said contract; that paper of that description weighs forty pounds for each and every ream, and two pounds for each and every quire thereof; that the said volume of laws of a private, local and temporary nature contain one hundred and thirty-six pages and no more, being four and one-quarter sheets of said paper; and that five hundred copies and no more were required to be by said contractors printed; and that all the paper necessary to be used and contained in the whole five hundred copies of said laws is eighty-eight and one-half quires, except a reasonable loss or waste to be supplied for waste in printing, which these relators aver not to be more than two per centum upon a number of five hundred copies. And in the auditing of said account under said contract and act of the legislature, these respondents found and certified to the auditor, that said relators had performed and furnished three hundred and forty-one thousand, five hundred and ninety-six (341,596) ems composition, at forty-four cents per thousand ; eighty-eight and one-half (88½) quires of paper, super royal, forty pounds to the ream, at thirty-five and one-half cents per quire; three hundred and fifty-four (354) quires of press work of twenty-four impressions, at four cents per quire ; folding four thousand two hundred and fifty (4,250) sheets, at

seventeen cents per one hundred; stitching four thousand two hundred and fifty (4,250) sheets, at twenty cents per one hundred; five hundred (500) paper covers, at one dollar and seventy cents per one hundred; putting on five hundred (500) covers, at fifteen cents per one hundred.

The respondents found the charges made in said account of relators, greatly in excess of the terms fixed by the contract, the greater portion of such excess being in the items of paper, press work, folding and stitching; and respondents further found that relators were not entitled to waste in the items of composition, covers, folding and stitching, and that an allowance of two per centum was a full and ample allowance for waste upon the items of paper and press work, and as in duty bound these respondents refuse to allow more therefor. And the respondents thereupon found to be due to said relators, for publishing said laws, the amounts above referred to, making a total of two hundred and twenty-one dollars and seventy-four cents; and afterwards, and on the same day, certified the same to the auditor, and these respondents aver that the above was a complete and just auditing of the said account. And these respondents have no knowledge or information, as to the usual and customary way of printing upon sheets to be used for the making of a book of the kind described, and deny the allegations of the petition relative thereto, and deny that it is necessary so to do; but on the contrary aver, that a form for printing pages of an octavo book may be so imposed, as that a sheet forming thirty-two pages or sixteen leaves may be printed, folded, and stitched, into a book of the kind the relators printed, without dividing such sheet; and further aver that only by means of such imposition and printing of sixteen pages to one impression, can the relators comply with the terms of their said contract; that a sheet so printed, upon a form of

sixteen pages so imposed needs to be folded four times and no more, for use and binding into a book of the kind described. And these relators aver, that whether or not said respondents did or did not print, divide into parts and fold the paper in the manner alleged, yet under their said contract they are entitled to charge for folding one sheet only to every thirty-two pages in said book contained; and these respondents therefore deny that it is necessary to cut each sheet into parts in the manner described, or that it is the proper and legal rule to count and charge for the folding or stitching of each of the parts, into which the relators aver that they divide the same. And the respondents deny that they have failed or refused to audit or certify the said account for the said relators, or any account whatever, or that the relators are entitled to receive any other sum on said account, than as certified and paid as aforesaid; and respondents deny that said relators have used said 177 3-11 quires of paper, or any paper in excess of 88 7-11 quires as aforesaid, in said publication, or have folded or stitched 8,500 sheets as charged, or have furnished any materials or have performed any work or service, or are entitled to any allowance for waste other than or greater than audited, found, certified and paid as herein aforesaid; or that said claim of ten per centum for waste is reasonable, customary or just."

Upon the trial of the cause before Mr. Chief Justice Lake, sitting in the district court, S. D. McDonald, a witness called by relators, testified that he had resided in Kansas since 1859; that he had been publisher and proprietor of a printing office for from twenty to twenty-five years; that he had charge of the state printing of Kansas for seven years; that the term *royal* applied to paper, was used to designate its size alone, and meant a sheet 19 by 24 inches in size, and that to bring it to octavo form it must be folded *three* times; that a royal sheet could

not be folded *four* times and be in octavo form; that a ream of royal paper is 480 sheets 19 by 24 inches in size; that the universal rule is to fold in sheets of eight pages or four leaves; and that eight pages or four leaves is a sheet of folding and stitching; that you cannot fold a sheet of sixteen or thirty-two pages; that if paper is printed on a form of sixteen or thirty-two pages it must be cut into sheets of eight pages for folding and stitching or they will not register; that a sheet 24 by 38 inches in size would not be *royal* paper, but would make two royal sheets; that eight pages of a book printed in octavo form is an impression of press work, and twenty-four impressions of press work of eight pages make a quire of press work; that there is a custom among printers to charge ten per cent. for wastage, where the contractor does the work at so much per item, and not a gross sum for the job; that the term *super royal* designates a sheet of paper 20 by 28 inches in size; that the book in question contains eight and one half twenty-fourths of a quire of royal paper, seventeen twenty-fourths of a quire of press work, and seventeen sheets of folding and stitching; that the paper weighs *twenty* pounds to the ream *royal;* that paper of that size is never made *forty* pounds to the ream.

On cross-examination this witness testified, that he had not examined the contract; that the value of paper was in proportion to the number of pounds; that the wastage on paper consists of the outside quires of a bundle of paper, of from five to ten sheets in getting the form ready, and that these items will average ten per cent.; that it is the custom to charge for folding and stitching the blank pages that precede and succeed the printed matter; that a form of press work is eight pages; that part of a form of press work is charged as a full form; that if sixteen pages are set up, the form is still eight pages octavo; that if sixteen pages are set up, it does not alter the case; that if the printer could profitably set up and print thirty-two

pages, it would not matter; that a printer may cut his paper into eight page forms and print it, or he may print it in sixteen page forms and then cut it; that a royal octavo page is about 6 by 9½ inches; that if he were required to print a book with pages of that size, and to fold the sheet four times, the paper to weigh *forty* pounds to the ream, he would use paper 24 by 38 inches, sixteen pages to the form, thirty-two pages to the sheet, which must be cut in two before binding; that if he was to order *forty pound* paper he would receive paper of that weight; that paper is always ordered by giving the size of the sheet required and its weight per ream; that in the volume of laws printed by the relators, there are 4¼ sheets of paper 24 by 38 inches, 32 pages to the sheet, that will weigh fully forty pounds to the ream; that in the whole five hundred copies of the said laws, there are two thousand one hundred and twenty-five sheets 24 by 38 inches in size, four thousand two hundred and fifty *royal* sheets, and nine thousand and five hundred sheets of folding and stitching; and that the terms " royal " and " super royal " were used to designate size and nothing else.

Upon a re-direct examination, this witness testified that if he were required to print a book in *royal or super royal octavo* form, and to furnish therefor *royal* or *super royal* paper, and to fold such paper *four* times, he would say it could not be done, as it would have to be folded across the printed page.

A number of witnesses were called by the relators, who testified to substantially the same facts.

The respondents called E. F. Gray, who testified that there was not a sheet of *royal* or *super royal* paper in the books printed by the relators; that it was *double medium,* and so known among the trade; that it was printed on a sixteen page form; that the first form had eight pages; that it took two hundred and fifty sheets of paper for each form for the five hundred copies; that it took two

thousand sheets of double medium paper to print the eight forms, five hundred copies, sixteen pages to the form, one hundred and twenty-five sheets to print the half form; that there are about eighty-nine quires of forty pound paper, two impressions to each sheet, 24 by 38, and four and one-fourth sheets paper to each book printed on sheets 24 by 38, backed and cut in two; that the terms *royal* and *super royal* had nothing to do with the case, not a sheet of either having been used; the proper rule for wastage is eleven quires to five hundred sheets; that to fulfil the requirements of the contract he would use paper 20 by 28, super royal, or 19 by 24 royal; that if he ordered royal paper weighing *forty* pounds to the ream, he should expect paper 19 by 24 inches in size of that weight; that paper was sold by the pound and size or weight wanted; that regular *double medium* size, such as the book in question was printed on is 24 by 38.

Upon cross-examination, this witness testified that the difference between the paper used and that which ought to be used was that the paper used was *double medium*, 24 by 38, and that required was royal, 19 by 24, or 20 by 25; that the book would have been much larger if of royal octavo size; that the book printed by relators was not royal octavo; that he never saw the laws of the tenth territorial session; that if a sheet of paper used in the book, namely 24 by 38, or *double medium* proper, was cut in two, it would make two sheets of royal paper, 19 by 24 inches in size; that there would be no difference in the workmanship, quality, or materials of a book, whether printed on the paper used, or on royal paper; that the only difference would be that in the one case there would be sixteen pages to an impression, and in the other only eight pages; and that the press work would only be half as much, but the result would be the same in all respects.

A number of other witnesses for respondents testified to substantially the same facts.

The court found all the issues in favor of the defendants; and further found " that the paper required by the contract in the petition mentioned, is twenty-four inches by thirty-eight inches in size, and should contain sixteen leaves, and thirty-two pages of printed matter to the sheet, printed on both sides; that each sheet of folding and stitching contains sixteen pages; and that no waste upon any of the items mentioned in relator's account should be allowed." Judgment of dismissal, and against the relators for costs, was then rendered, and to reverse this judgment and finding of the court the relators brought the case here by petition in error.

*Seth Robinson*, for plaintiffs in error, argued at length, the claim of the relators, contending, *inter alia*, as follows:

I.  It is admitted and clearly proved that the work done and materials used were fully equal in workmanship, style, quality, and weight of paper, to the specimens furnished by the secretary of state, that the volumes were printed in royal octavo form, on good small pica type, with pages of the same size and form as those of the tenth session of the territorial legislature, and with similar marginal notes and index; that the workmanship and materials were in all respects satisfactory to the defendants.  No question is made on these points, nor is there any dispute as to the amount of work done or materials furnished.  General Statutes, §§ 7, 15, pages 517, 519.

II.  But the real question (barring for the present the matter of wastage) is how the price of the work shall be computed, that is, upon what principle the computation shall be made; and the question arises in this way:  The contract provides (see contract, class 4) that the relators

shall furnish for this class of work (general and local laws, etc.,) super royal paper, that is, paper in sheets 20 inches by 28 inches in size, weighing 40 pounds to the ream, at thirty-five and one-half cents *per* quire.   On the other hand, the law provides, (see sections 7 and 15 above cited) that they shall use royal paper, that is, paper in sheets, 19 inches by 24 inches in size, and that the quality shall correspond to the specimens furnished.   In fact, the relators did furnish royal paper, weighing only 20 pounds to the ream, but fully complying with the law and fully equal to the specimens furnished; and of all this no complaint is made.  But the relators purchased their paper in sheets double the royal size, that is, 24 inches by 38 inches in size, and, having a press suitable for that purpose, printed it in that size.   Now, because this paper, taken in double sheets, as printed by the relators, happens to weigh just 40 pounds to the ream, it is insisted by the defendants, and it was found by the court, that the paper intended by the contract was neither super royal nor royal in size, but twice the size of the latter, namely: 24 inches by 38 inches in size, making 16 leaves or 32 pages; and that it is only for a quire of such paper that the relators are entitled to thirty-five and one-half cents.

Again, as to folding and stitching: This seems to have been treated by the parties as coming within class 6 of the contract instead of class 7, and, if that construction be adopted, the sheets are required to be folded *octavo* (four times,) and for 100 sheets of folding relators were to receive 17 cents and for 100 sheets of stitching, 20 cents (see contract, class 6.)   But a sheet to be folded *octavo*, that is in 8 pages, can only be folded twice and the two clauses, *octavo* and *four* times are repugnant.   But it so happens that the paper, as purchased and printed by the relators, if folded four times, that is, not in 8 pages but in 32 pages to the sheet will make the pages of the required size.

The defendants however, do not insist that the paper shall be folded four times, as that is shown by the testimony to be practically impossible, but in 16 pages to the sheet, making each royal sheet of paper one sheet of folding instead of two, and while the court considered that they were entitled to the full benefit of the clause *four times*, yet the finding was entered in accordance with their construction.

The court also found, that 16 pages were an impression of press work instead of 8. But as there was no issue on that point, and as the relators and the defendants are agreed upon 8 pages, that finding of the court was quite gratuitous and will not be regarded.

So the questions to be considered here are four in number, namely:

*First.* Are the relators entitled to relief by *mandamus?*

*Second.* If they are, what is the size of the paper which the relators agreed to furnish at thirty-five an one-half cents a quire?

*Third.* How many pages are to be counted to the sheet of folding and stitching?

*Fourth.* What amount for wastage, if any, are the relators entitled to?

I. The right to the relief:

It is, perhaps conceded, that if the facts set forth in the petition are true, the relators are entitled to the relief demanded.

1. There is no doubt that the relators have a clear legal right to be paid for their work according to the true intent and meaning of the contract, and that they have no other adequate remedy.

2. It being conceded that the work is in all respects properly and faithfully done, and no dispute arising as to the amount performed, it is equally evident that the

defendants have no final discretion to say in what manner the compensation shall be adjusted, or what amount is due the relators therefor. The court, in such cases, will settle the legal principle which should govern their action and direct them how to proceed. *Dillon, Mun. Corp.*, 626, *and cases cited. The People v. Judges*, 20 *Wend.;* 658. *Hull v. Supervisors of Oneida*, 19 *Johns.*, 259, 263. *Adriance v. City and County of N. Y.*, 12 *How. Prac.*, 227. *Judges of Oneida Common Pleas v. People*, 18 *Wend.*, 78.

II.   The size of the paper which the relators contracted to furnish.

1.   The law requires royal (19 by 24) not super royal (20 by 28) paper, and the law is made a part of the contract by express reference; and if there were any dispute upon this point, which there is not, the requirements of the law must govern the action of the parties, although no direct reference were made to its provisions. Therefore, the relators were not in fault in furnishing paper royal size, instead of super royal. *Vide section 7, Printing Act of* 1867. *General Statutes*, 515.

2.   The law requires that the materials shall be fully equal in quality to the specimens furnished by the secretary of state. The contract requires that the paper shall weigh 40 pounds to the ream. The relators complied with the requirements of the law, and the paper which they used was fully equal to the specimens furnished and entirely satisfactory to the defendants both in weight and quality. *Vide section* 15, *Printing Act of* 1867. *General Statutes*, 519.

3.   If the relators had used super royal paper, it must have been cut to royal size and the result would have been the same.

4.   But it is not contended that the relators should have furnished super royal paper, thus making a super royal

*octavo* volume, but it is claimed that they should furnish paper twice the royal size (24 by 38.) Is there any principle of construction upon which this position can be maintained?

*a.* It cannot be maintained on the ground that paper double the royal size, as furnished, weighs just 40 pounds to the ream, for that is accidental, and it might have weighed 35 pounds, 45 pounds, or any other number.

*b.* It cannot be maintained on the ground that the paper, being of half the weight, cost half the price (if that be a fact established by the proofs;) first, because that too is accidental; and, second, because though it be granted for a moment and for the present purpose, that the contract controls the provisions of the statute, nevertheless the state is entitled to a deduction, not for the difference in the cost of the paper, but for the difference in the value of the book, for this is the measure of damages; and it is proved that the paper used is better for the purpose and makes a better book than the paper contracted for. Even if the work were in this respect defective, the defendants received it knowing the defect, and are bound for the contract price. *Cook v. Brandeis,* 3 *Met. Ky.,* 555. *Reed v. Randall,* 29 *N. Y.,* 358. *Attix v. Pelan,* 5 *Clarke Iowa,* 336. *Neville v. Frost,* 2 *E. D. Smith,* 62. *Francois v. Ocks,* 2 *E. D. Smith,* 417.

*c.* The only ground on which it can be maintained with any show of reason is, that this work is required to be folded and stitched under class 6 of the contract which requires the paper to be folded four times; and the only paper which can by possibility be folded four times into royal *octavo* form is paper twice the royal size, such as the relators purchased for their use.

5. This is the only rational principle on which the position can be maintained; and, granting that it has any foundation, we are in this case, that we have a contract to furnish, at an agreed price, *royal* paper, to be *folded*

*four times* into royal octavo form, which contains two repugnant clauses, namely: *royal octavo*, and *folded four times;* and the answer to this position is:

1.   Classes 4 and 6 are two distinct and separate classes of work, and are expressly required by law to be let and awarded in two several and separate contracts, which are likely to be and frequently are awarded to different individuals; and, therefore, the terms of the two are not to be construed together. *Vide sections 3 and 12, Printing Act of 1867, General Statutes*, 515, 519.

2.   But, if they are to be construed together, the case of the defendants is no better off; for, in instruments *inter vivos*, the rule is that of two repugnant clauses, the first is to be retained and the latter rejected; and this rule demands that the term *royal*, more especially as it is a term of art, and has a fixed and technical signification, shall stand. *Bacon's Abr. Tit. Grants*, (I). 2 *Pars. Contr.*, 513, and note. *Chitty's Contr.*, 90. *Shep. Touch.*, 88. *Cope v. Cope*, 15 *Sim.*, 118. *Furnival v. Coombes*, 5 *M. & G.*, 736, *and argument of Manning, Serjt. Sir Anthony Mildway's Case*, 6 *Coke*, 41b. *Co. Lit.*, 146 a.

Some of these cases are of deeds, but the same rules of interpretation prevail in case of deeds as of simple contracts. *Addison on Cont.*, 162. · *Seldon v. Senate*, 13 *East.*, 73.

3.   This practical construction, adopted by the parties, binds the relators to take 17 cents per 100 for folding and 20 cents for stitching, and nothing for binding (compare classes 6 and 7); but it estops them no further.


III.   How many pages are to be counted to the sheet of folding and stitching?

1.   This work comes under class 7, but seems to have been treated as coming under class 6. Under the former

class the sheet is required to be folded *octavo*, that is, in 8 pages, and here is no difficulty.

2.  But under the latter class it is required to be folded *octavo* (*four times*).  This is impossible, as only a sheet of eight pages can be folded *octavo*, and only a sheet of 32 pages can be folded *four times*.

3.  Then, here we have again two repugnant clauses, which cannot stand together.  The first must be retained and the latter rejected.

IV.  Are the relators entitled to wastage?

1.  It is to be observed that the statute is silent on the subject; unless the latter clause of section 20 of the printing act of 1867 be held to apply, which provides that the defendants shall, in no case, allow constructive charges, *or any other than is specifically named in the act.*

2.  But is wastage a constructive charge, and is it not specifically named in the act?

3.  A constructive charge is understood to be one not expressly named, but arising by construction or inference. In this case, the proof is that the work and materials for which wastage is charged are in fact actually done and furnished, but being difficult to calculate are averaged at a *per centum*, fixed by custom, under the name of wastage; so, in fact, when examined into, it is found to be not a constructive charge and to be specifically named.

V.  It may be remarked, generally, that upon all these four points the immense preponderance of the testimony on the part of the plaintiffs ought to have great weight as to the proper method of computation, there being no statutory rule.

*J. R. Webster, Attorney General,* for defendants in error, (with whom was also *J. C. Cowin,*) submitted the following points:

In the trial of this action it was testified, among other things, as follows:

1. That the term royal, as applied to book papers, designates paper 19 by 24 inches, sizes varying slightly from that dimension being sometimes termed royal.

2. That royal octavo form designates a form of eight pages, so imposed or arranged as to cover or print one side of a royal sheet.

3. That royal paper is not made or used for book purposes weighing forty pounds to the ream, and if made would be unsuitable for book purposes.

4. That the usual and ordinary book paper for manufacture of a royal octavo book is made, sold and used in sheets of 24 by 38 inches, weighing forty pounds to the ream of such sized paper.

5. That forty pound book paper, suitable for the manufacture of the book printed, as understood in the trade, means paper 24 by 38 inches.

6. That paper was furnished and used by relators, 24 by 38, weighing forty pounds to the ream of that size.

7. That four and one-half sheets 24 by 38, and of the contract weight, were necessary to print one copy of the local laws, or nine sheets 19 by 24, technically royal, weighing but twenty pounds to the ream, without waste.

8. That royal paper can not be folded four times for manufacture of an octavo book.

9. That paper of a given quality is valued and sold by weight, the scale of prices ranging within ordinary sizes, about in the ratio of its weight.

10. On the question of waste, the testimony is conflicting, but is made with reference to the custom of printers and not with reference to the contract, the weight of evidence being, as respondents submit, that it is the custom of printers to allow eleven quires of the paper,

The People, ex rel., v. Gosper, et al.

double sheet, to five hundred sheets, being a waste on paper of fifty-six to the one thousand, and that no waste is allowed on press work, folding, stitching, binding or putting on covers.

11. *As tending to explain the contract*, in an answer to the interrogatory, "If it were required to print a book with pages of the size required for the local laws, and to use paper of a size to fold four times and weigh forty pounds to the ream, what kind of paper would be used and how many pages to the form (or one side of the sheet)?" the witnesses generally testified that it would require paper 24 by 38 inches, which would make sixteen pages to the form, and thirty-two to the sheet.

This is the paper used, the mode of computation adopted by the respondents, and which they claim to be the kind required, the relators claiming that paper 19 by 24, technically royal, weighing but twenty pounds to the ream, fulfills the contract.

12. It is admitted by respondents that super royal paper (20 by 28) was not necessary or suitable to make this book of the size required by law as the increased size of paper would be trimmed or cut away and wasted in the finishing of the book to the regulation size. To work without waste, it was necessary that the paper should be of some size germane to royal.

This action turns upon the construction of the contract, which is a question of law for the court after the meaning of the technical terms has been found. There is no dispute between the parties as to the meaning of the terms super royal, octavo, and octavo form. These terms being admitted to mean just what the relators claim for them, what construction shall be placed upon the contract?

I. The contract must be construed with reference to the known authority and powers of the officers of the

state with whom the relators contracted, and the provisions of the law under which the contract was made. *Mc Vey, et al., v. Ohio University,* 11 *Ohio,* 134, 136. *Smith v. Parsons,* 1 *Ohio,* 236, 242. *Darling v. Peck,* 15 *Ohio,* 65, 68.

II.   The contract must be construed with reference to the situation of the parties, the acts to be performed, and the manner of performance, and with reference to the whole instrument, and the effect of any proposed construction. *Merrill v. Gore,* 29 *Me.,* 346, 348–9. *Saunders, et al., v. Clark,* 29 *Cal.,* 299, 304. *Rose v. Roberts,* 9 *Minn.,* 119, 122. *Racouillat v. Sansevain,* 32 *Cal.,* 376, 392–397.

III.   Where parties have contracted for the furnishing and working up of material for a particular purpose, it will not be held that a material wholly unsuitable was intended, even if in technical terms described, and when the material technically described, would be wholly unsuitable to the purpose intended, but the usual and ordinary material used for the purpose answers partially to the descriptive terms of the contract, the usual and ordinary material will be held to be intended, although the technical terms may not be applicable thereto.   This only can effectuate the intention of the parties.   All the parts of the contract should be examined to explain the ambiguity.   *Chase v. Bradley,* 26 *Me.,* 531, 540.   *Merrill v. Gore,* 29 *Me.,* 346, 348.   *Gray v. Clark, et al.,* 11 *Vt.,* 583, 585.   *Warren v. Merrifield,* 8 *Met.,* 93, 96.

In this case the relators technically contracted to furnish a material unsuitable in weight (super royal paper 20 by 28 inches, weighing forty pounds per ream); on the other hand, the ordinary book paper, suitable for the purpose, is larger than royal, is 24 by 38 inches in size

and weighs forty pounds to the ream, It should be held to be the material intended by the contract.

IV. The words super royal and royal octavo, form no part of the contract. The former secretary of state, auditor, and treasurer who let the contract, had no power to contract for the printing of the laws in that form. These words then, being out of the contract, and mere surplussage, the relators merely contracted to furnish suitable paper for the purpose, weighing forty pounds to the ream, and the ordinary suitable paper weighing forty pounds to the ream is contended for by respondents. *Sec. 7, Printing Act of* 1867, *General Statute,* 517. *See Class* 4, 6 *and* 7 *of Contract.*

V. If the words super royal and super royal octavo are not mere surplusage, then the relators cannot recover in this case, for in that view, the former secretary of state, auditor and treasurer, exceeded their powers in contracting for the publication of the laws in that form, and the contract is void *pro tanto.* Had the relators in all things exactly fulfilled the terms of their contract, they could not recover. Can they recover where confessedly they have not fulfilled? Were this a contract between individuals, the work or material being accepted, the contractor might recover on a *quantum meruit,* or a *quantum valebat;* but not so in this action—their legal right must be clear, certain, absolute, positive, perfect and complete. *The People v. Forquer, Breese* 104, 114. Their only proper relief is by recourse to the legislature. *The People v. Talmage,* 6 *Cal.,* 256, 258.

VI. The evidence is given with reference to the custom of printers, and not the right of relators to charge for waste under their contracts. The contract is for that of the several classes of printing an entire contract. The

contract under class four is a contract not for composition by the thousand ems, nor for furnishing paper, but for printing and furnishing ready for the binder, the required number of copies of the laws, compensation being reckoned by the thousand ems for the composition, by the quire for the paper contained, and the necessary impressions of press work. Under the contract the relators are not entitled to waste. They are not in the relation of separate contractors for paper, and can only charge for the paper in the book printed and delivered in good condition and ready for the binder.

MAXWELL, J. after reviewing the evidence above quoted, and as given in the record, delivered the opinion of the court as follows:

The workmanship and material in this case are conceded to be superior to the specimen copy, and the only matter in dispute is the proper construction of the contract. It is contended by the relators, that where a term having a well known meaning is used to designate the *size* of paper, as *royal* or *super royal*, where paper is furnished by the quire or ream at so much per quire as in this case, that they are entitled to be paid thirty-five and one-half cents per quire for each quire of royal or super royal paper used in the book, and that the provision in the contract that the paper used shall weigh forty pounds to the ream should be rejected; *first*, because it is a general proposition that where clauses are repugnant and incompatible, the earlier prevails in deeds and other instruments *inter vivos; second*, because the law is made a part of the contract by express reference, and sections seven and fifteen require that the laws shall be printed in "royal octavo form."

The proof clearly shown that a sheet of paper designated as *royal* is 19 by 24 inches in size, and that a sheet

known as *super royal* is about 20 by 28 inches in size, and that there is no such term as double royal applied to paper. It also clearly appears that paper of the quality here used weighs but *twenty* pounds to the ream where the sheet is royal 19 by 24 inches or super royal 20 by 28 inches. There is no proof as to the relative cost of paper 19 by 24 as compared with that 24 by 38 inches in size, but several witnesses testified that paper is always bought by the pound, without regard to the size, and is furnished of the quality and weight ordered, from which it is reasonable to infer that paper 19 by 24 inches in size is worth but half as much as paper of the same quality 24 by 38 inches.

The rule of construction contended for by counsel for the relators, applies to *deeds* and *grants* on the principle that if anything is granted *generally*, and other words follow that go *to destroy* the grant, they are rejected as being repugnant; but the rule does not apply where the words are merely explanatory, and not repugnant to the grant. Chancellor Kent says: " the rules of construction of contracts are the same in courts of law and equity, and whether the contract be under seal or not under seal. The mutual intention of the parties is the great and sometimes difficult object of inquiry, where the terms of it are not free from ambiguity. To reach and carry that intention into effect, the law when it becomes necessary will control even the literal terms of the contract, if they manifestly contravene the purpose; and many cases are given in the books in which the plain intent has prevailed over the strict letter of the contract." 2 *Kent Com.*, 555.

" If the intention be doubtful it is to be sought after by a reference to the context and to the nature of the contract. It must be a reasonable construction and according to the subject matter and motive. *Sensus verborum ex causa dicentis accipiendus est, et secundum subjectam materiam.* The whole instrument is to be viewed

and compared in all its parts so that every part of it may be made consistent and effectual." *Id.* 555.

"It is a true rule of construction that the sense and meaning of the parties in any particular part of an instrument may be collected *ex antecendentibus et consequentibus.* Every part of it may be brought into action in order to collect from the whole, one uniform and consistent sense if that may be done." *Barton v. Fitzgerald,* 15 *East,* 541.

In the construction of a contract, the acts to be performed under it and the manner of performance may be considered; and such a construction should be adopted as will give effect to the provisions which carry out the evident intent of the contract. *Merril v. Gore,* 29 *Maine,* 346.

In this case, if we take the *entire* contract into consideration, there is clearly an agreement on the part of the relators to furnish paper similar to the specimen, (which appears to have been a copy of the session laws of the tenth session of the territorial legislature) or to be at least of as good quality and weighing *forty* pounds to the ream.

The rule is well established that special provisions of a statute in regard to a particular subject will prevail over general provisions in the same or other statutes so far as there is a conflict; it is therefore contended that section seven of the printing act prescribing the *size* of the paper to be used as *royal* means paper 19 by 24 inches in size, and that *super royal* paper if used could not be folded to form more than eight leaves *royal octavo,* and that the relators have therefore fully complied with the terms of the contract by using *royal* paper 19 by 24 inches in size, although it weighs but twenty pounds to the ream, and that the term "*royal octavo*" found in the law should prevail over the express provisions of the contract that the paper should weigh *forty* pounds to the

ream, and that all material should be of full weight and quality.

We do not think there is any conflict between the terms of the statute and the contract. While the proof shows that there is no such term as double royal applied to paper, it clearly appears that paper twice the size of royal, weighing *forty* pounds to the ream, is in common use, and that paper of that kind was in fact used in printing the laws in this case.

The proof shows clearly that the sheets 24 by 38 inches required by the contract, should be cut into two sheets, 19 by 24 inches, before folding and stitching, and we are of the opinion that allowance should be made for the folding and stitching of each of such sheets. This is also in accordance with the finding of the court below.

The answer admits that the relators are entitled to waste on press work and paper, but claim that the relators are not entitled to more that two per cent. therefor. On the issues made by the pleadings the court should have found the amount of waste to which the relators are entitled under the pleadings and proof, and as the proof upon this point is conflicting the cause must be remanded to the district court with instructions to find the amount due relators for waste upon press work and paper.

JUDGMENT ACCORDINGLY.

MR. JUSTICE GANTT concurs.