THE STATE OF NEBRASKA, EX REL. LOUIS HELMER, v. JAMES McCONNEL.

1.  **License Moneys arising in Cities:**  TO WHAT FUND THEY BELONG: CONSTITUTIONAL LAW.  Under the law as it stood prior to the adoption of our present constitution, all moneys arising from licenses granted by cities to sell intoxicating liquors belonged to the common school fund of the proper county.   But under the operation of Sec. 5, Art. VIII, of that instrument, this rule is changed, and such moneys now belong exclusively to the common school fund of the cities, respectively, in which they are collected.

2.  **Construction of Constitution.**  In construing a section of the constitution, effect must, if possible, be given to every portion of it.

ORIGINAL application for mandamus.

*Galey & Abbott* and *Kennard & Scott*, for the relator.

The language of the constitution is so explicit we can hardly conceive how there could be any misconception or disagreement as to its application, that all moneys arising under *a general* LAW, whether derived from fine, penalty, or license, shall go to the county fund, and that *all moneys* arising under and by virtue of any city *ordinance passed within the scope of the city's power*, and not *repugnant to any general law*, shall go into the common school fund of such city.

We think there is no other construction safe, and no

other conclusion can be reached, when we take the natural signification of the language, in the grammatical arrangement in which the framers of the constitution have placed it. With this construction there is no absurdity, and no contradiction between the different parts of the section. The plain meaning on the face of the instrument is the one alone which we are at liberty to say was intended to be conveyed, and in such case there is no room for construction, and neither legislation nor courts have a right to add to or take away from that meaning. *Newell v. The People*, 7 N. Y., 97. *Denn v. Reid*, 10 Peters, 524.

It seems to us the only question remaining to be considered is, was this money collected under and by virtue of a general state law, or was it collected under and by virtue of a proper city ordinance? It is true the city authorities have attempted to meet this view of the case by passing what purports to be a city ordinance to regulate and provide for the licensing of the sale of malt, spirituous, and vinous liquors, which, being in conflict with the statute and the constitution, is unquestionably null and void; and this money has been collected, not by virtue of this or any other ordinance, but by virtue of the general statute; is held by the respondent city treasurer in trust for the county treasurer, and should have been paid over on demand for "the use of the common school fund" of the county. *State, ex rel Hahn, v. Hardy*, 6 Neb., 377.

*T. M. Marquett*, for the respondent.

1. By our laws the granting of a license to sell malt, spirituous, or vinous liquors is made a "police regulation" of the city of Lincoln; this is admitted by the relator.

2. Section 5, of Art. VIII, of the constitution puts a

limitation upon the legislature as to where the money arising from any fine, penalty, and license money, by virtue of the police regulation of the state, shall go.

3.  Whenever the police regulation of the state in reference to a fine, penalty, or license money, is entrusted to a city for it to regulate, the money arising therefrom goes into the city treasury for the benefit of the city schools.   As a corollary to this proposition it follows, that inasmuch as the police regulation of the dramshop is entrusted to the city—all of its direct burdens being placed upon the city—the money arising from said license should belong to the city.

4.  And this comports with the genius of our institutions:  " That whenever any matter as a police regulation is entrusted to any subdivision of the state, that subdivision assumes the burdens of, and is entitled to the benefits that arise from, such regulations."

5.  The meaning of the words " all such fines, penalties, and license money shall be appropriated exclusively to the use and support of the common schools in the  respective subdivision where the same accrues," is that a fine imposed and collected by a city officer accrues in the subdivision of the state known as the city. License money determined and imposed by an ordinance of the city, and regulated and collected by city authorities, accrues in the city.  You can give no other meaning to the words.

6.  The constitutional provision found in Sec. 5, of Art. VIII, can have no reference to a license *tax*, as the money for a license tax, or any other tax, imposed by the city, for the reason that a tax imposed by the city could not go into the county treasury.

7.  Section 5, of Art. VIII, is a nullity, or it has reference to the license money proper as we are now considering.

The State, ex rel. Helmer, v. McConnel.

LAKE, J.

This is an application for an alternative writ of mandamus to compel the defendant, who is the treasurer of the city of Lincoln, to pay over to the relator, who is the treasurer of Lancaster county, certain moneys now in his hands, and which were received by him on account of certain licenses granted by the corporate authorities of said city to certain persons to sell malt, spirituous, and vinous liquors. It is claimed by the relator that the money in question belongs to the common school fund of the county in which the city is situated, of which fund he is the lawful custodian, while the respondent contends that it is a part of the common school fund of the city, and therefore rightfully held by him.

Under the law as it was prior to the adoption of our present constitution, all moneys coming from this source did belong to the school fund of the particular county within which they were collected, and the proper county treasurer was empowered to demand and receive the same from the city. *The City of Tecumseh v. Phillips*, 5 Neb., 305. *White v. The City of Lincoln*, Id., 505. And there has been no change by the legislature of the statutes under which these cases were decided, and the rule just stated laid down.

But it is claimed by the respondent that, under the operation of Sec. 5, Art. VIII, of our present constitution, this rule has been changed, and that now these moneys belong exclusively to the common school fund of the cities respectively in which they arise. And whether this be so or not is the sole question to be decided at this time. The provision of the constitution referred to is the following:

" SEC. 5. All fines, penalties, and license moneys arising under the general laws of the state, shall belong

and be paid over to the counties respectively where the same may be levied or imposed; and all fines, penalties, and license moneys arising under the rules, by-laws, or ordinances of cities, villages, towns, precincts, or other municipal subdivisions less than a county, shall belong and be paid over to the same respectively. All such fines, penalties, and license moneys shall be appropriated exclusively to the use and support of common schools in the respective subdivisions where the same may accrue."

It is contended on the part of the relator that inasmuch as all of the powers of the municipal authorities over the subject of licensing the sale of malt, spirituous, and vinous liquors, are given by the general license law of the state, the funds arising from the exercise of those powers are necessarily embraced within the first clause of this section, and must go into the school fund of the county.

But we cannot adopt this construction. It is only in a technical sense that such moneys can be said to have arisen under a general law of the state; and the same may be said, in a like sense, of every one of the powers confided to the municipal subdivisions of the state. To hold that this money belongs to the county simply because its primary cause, or source, is traceable to a general statute, would leave nothing whatever for the next succeeding clause to operate upon. That such would be the necessary result there can be no doubt whatever, for it is impossible to conceive of a single power which one of these municipal subdivisions can lawfully exercise that is not given either by the general incorporation act under which cities are organized, or by some other general law of the state. A construction having this effect would certainly do violence to the plain intent and spirit of this constitutional provision, and totally ignore that familiar canon of construc-

tion which requires effect to be given, if possible, to every portion of the section. Potter's Dwarris, 144. *People, ex rel. v. Gosper*, 3 Neb., 310.

In distinguishing the "fines, penalties, and license moneys arising under the general laws of the state," from those "arising under the rules, by-laws, or ordinances, of cities, villages," etc., it is evident to us that reference was had, not to the primary source of the power, but to the immediate authority by which the fine or penalty is imposed, or the license granted.

By section 345 of the act, "To license and regulate the sale of liquors," the sale of "malt, spirituous, or vinous liquors, or any intoxicating drink," without first obtaining a license to do so, is prohibited, and made a highly penal offense. But, as this court has held in the case of *Phillips v. The City of Tecumseh*, 5 Neb., 312, such license can be granted within the limits of an incorporated town or city only by the proper authorities thereof, and under such rules and regulations as they may provide. And by another general act, under which the city of Lincoln was incorporated, authority is given to "prohibit and suppress tippling shops" altogether. Gen. Stat., 144.

From this it will be seen that, independently of the action of the corporate authorities of the city of Lincoln, by ordinances duly passed, not a single dollar of the money in controversy could have been imposed, or collected. We must hold, therefore, that it falls within the second clause of the section, and belongs to the common school fund of the city, of which the defendant is the lawful custodian.

WRIT DENIED.