STATE, EX REL. JAMES W. PRIMMER, V. O. R. BROD-BOLL.

[FILED DECEMBER 17, 1889.]

**Schools:** LICENSE MONEY: DISTRIBUTION. The village of L. is partly in three school districts, the school house in each of said districts being outside of the corporate limits of L. The sum of $1,000 was received by the corporate authorities of that village for liquor licenses therein. In an action for a distribution of said money, *held*, that as the formation of the school districts, under certain conditions, was a power bestowed upon the county superintendent, the presumption was that the districts were so formed for good cause, as to secure a sufficient number of pupils, or for the convenience thereof, or to include taxable property, or all these causes combined, and that the aforesaid districts were entitled to an equal division of the money.

ORIGINAL application for *mandamus*.

*W. A. Hampton,* and *Sullivan & Reeder,* for relator.

*George G. Bowman,* for respondent.

MAXWELL, J.

This is an application for a *mandamus* to compel the defendant to pay over certain moneys received for liquor licenses in said village. The defendant demurred to the petition, and the case is submitted on the pleadings. The petition is as follows:

"First—That the village of Lindsay, in Platte county, Nebraska, now is, and since the 8th day of March, 1888, has been, an incorporated village, organized and existing under the provisions of section 40 of chap. 14 of the Statutes of Nebraska, and that the defendant is the duly elected, qualified, and acting treasurer of said Lindsay.

"Second—That said Lindsay includes within its corporate limits two hundred acres of land, one hundred and twenty acres of which now is, and since the incorporation of said Lindsay has been, within the corporate limits of school district 29, in said Platte county, twenty acres of which now is, and since the incorporation of said village has been, within the corporate limits of said school district 18, in said Platte county, and the remaining sixty acres of which now is, and since the incorporation of said Lindsay has been, within the corporate limits of school district No. 70, in said Platte county.

"Third—That the school houses in each of said school districts are located outside of the corporate limits of said Lindsay, and that no school house is now located within the corporate limits of said Lindsay, or has been so located since its said incorporation.

"Fourth—That in the year 1889, and before the commencement of this action, there was paid into the hands of the treasurer of said Lindsay the sum of $1,000 license

money, by licensed vendors of malt, spirituous, and vinous liquors of said village, said license being issued and license money paid under the provisions of chapter 50 of the Compiled Statutes of Nebraska and an ordinance of said village passed in pursuance thereof, and that said sum of $1,000 still remains in the hands of said defendant.

"Fifth—That the whole number of children of school age in school district 18 is sixty-four, of which number four reside within the corporate limits of said Lindsay; that the whole number of children of school age in said school district 29 is fifty-eight, of which number twenty-four reside within the corporate limits of said Lindsay; that the whole number of children of school age in said school district 70 is forty-one, all of whom reside outside the corporate limits of said Lindsay.

"Sixth—That on or about the 20th day of July, 1889, your plaintiff, as treasurer of said school district 18, demanded of the defendant the sum of $386.50 for the use and benefit of school district 18, said sum being that proportion of said license money which the whole number of children of school age in said district 18 is of the whole number of school children in said three school districts; but said defendant refused to pay to your plaintiff any portion whatsoever of said license money, giving as a reason for such refusal: 'That said moneys could not be used outside of the corporate limits of said Lindsay.'"

Section 5, article 8, of the Constitution provides that "All fines, penalties, and license moneys arising under the general laws of the state shall belong and be paid over to the counties, respectively, where the same may be levied or imposed, and all fines, penalties, and license moneys arising under the rules, by-laws, or ordinance of cities, villages, towns, precincts, or other municipal subdivision less than a county, shall belong to and be paid over to the same respectively. All such fines, penalties, and license moneys shall be appropriated exclusively to the use and

State, ex rel. Primmer, v. Brodboll.

support of common schools in the respective subdivisions where the same may accrue."

In *State, ex rel. Helmer, v. McConnell*, 8 Neb., 33, this court construed the above provision, and held that license moneys collected under the ordinances of a city belong to the school fund of such city. LAKE, J., in delivering the opinion of the court, said: "In distinguishing the 'fines, penalties, and license moneys arising under the general laws of the state' from those 'arising under the rules, by-laws, or ordinances of cities, villages,' etc., it is evident that reference was had, not to the primary source of the power, but to the immediate authority by which the fine or penalty is imposed, or the license granted.

"By section 345 of the act 'To license and regulate the sale of liquors,' the sale of malt, spirituous, or vinous liquors, or any intoxicating drink, without first obtaining a license to do so, is prohibited and made a highly penal offense. But, as this court has held in the case of *Phillips v. The City of Tecumseh*, 5 Neb., 312, such license can be granted within the limits of an incorporated town or city only by the proper authorities thereof, and under such rules and regulations as they may provide. And by another general act, under which the city of Lincoln was incorporated, authority is given to 'prohibit and suppress tippling shops' altogether. (Gen. Stat., 144.)

"From this it will be seen that, independently of the action of the corporate authorities of the city of Lincoln, by ordinances duly passed, not a single dollar of the money in controversy could have been imposed or collected. We must hold, therefore, that it falls within the second clause of the section, and belongs to the common school fund of the city, of which the defendant is the lawful custodian."

To the same effect are: *Herman v. Crete*, 9 Neb., 350; *School District No. 2 v. Saline Co.*, 9 Id., 404; *State, ex rel. School District, v. Heins*, 14 Id., 477; *State v. Wilcox*, 17 Id., 219.

17

The license moneys, therefore, are to be applied to the support of the schools of the corporation; in other words, the school district, or districts, of the municipality are to receive the money. There is no requirement that the school house, or where there is more than one, the school houses, shall be situated within the limits of the municipality. The formation and division of school districts, under certain restrictions, devolves upon the county superintendent. If a district is so formed as to embrace territory not within the limits of the municipality, the presumption is that such territory is necessary to procure a sufficient number of scholars, to secure efficiency in the school, or for the convenience of pupils, or to secure sufficient territory on which to levy taxes which shall not be burdensome, to maintain a prosperous and progressive school or schools; or, for all of these causes and others combined. Whatever the cause for the erection of school districts, they cannot be considered in this connection. Here we find three school districts in the little town of Lindsay. No doubt there is a good reason for the number, which does not appear in this record. The schools are open to the children of school age residing in, or that may come into, that part of the municipality. This is one of the inducements to parents with children of school age to purchase lots and settle in that territory—that schools for the education of all the children of school age in each district are provided. Without such educational advantages, no intelligent parent would think of settling therein.

There is no provision of statute in such case for dividing the license moneys among the schools in proportion to the number of scholars from each school district, nor to make the division in proportion to the extent of the territory of each. It should therefore be applied equally among the districts, and it is so ordered. A writ of *mandamus* will issue to enforce this order.

WRIT ALLOWED.

THE other judges concur.