NEWLEAN & HOARD, PLAINTIFFS IN ERROR, V. OLE OLSON, DEFENDANT IN ERROR.

1. **Chattel Mortgage**: CONSTRUCTION: SALE BY MORTGAGEE. A chattel mortgage, like any other instrument, is to be construed together. The whole instrument is to be viewed and compared in all its parts, so that every part of it may be made consistent and effectual. Therefore where the mortgage provides that the debt shall draw interest and the debt is to be paid at certain times named, and thereby there is an implied agreement that the mortgagor shall remain in possession of the property until there is a default in the payment of the money or some part thereof, a provision in the mortgage that, "If the mortgagee shall at any time feel unsafe or insecure he may seize and sell, as aforesaid, the property," will not authorize such mortgagee without cause to seize and sell such property before the debt becomes due.

2. ——: ——. The words "feels unsafe and insecure" do not mean that he may exercise an arbitrary discretion in the premises, but the mortgagor must be about to do or has done some act which tends to impair the security of the mortgagee.

ERROR to the district court for Burt county. Tried below before HOPEWELL, J.

*T. L. Lewis*, for plaintiff in error, cited : *Adams v. Neb. City Nat'l Bank*, 4 Neb., 370. *Ahlman v. Meyer*, 19 Neb., 68. Jones Chattel Mort., Sec. 426. *Huebner v. Koebke*, 42 Wis., 319. *Smith v. Post*, 1 Hun, 516. *Wells v. Chapman*, 13 N. W. R., 842. *Robinson v. Fitch*, 26 Ohio State, 663.

*H. H. Bowes*, for defendant in error, cited : *Roy v. Goings*, 96 Ill., 361. Jones Chattel Mort., Sec. 431.

MAXWELL, CH. J.

On the 25th of September, 1886, the defendant in error purchased from the plaintiff one Moline spring wagon, one Henney top buggy, and one Deere, Wells & Co. top buggy,

and to secure the payment of the same executed and delivered to the plaintiff in error three instruments, alike except as to the time of payment, the first one of which is as follows:

"$100.              :   OAKLAND, NEB., Sept. 25, 1886.

"On or before the first day of March, 1887, for value received in two buggies and one spring wagon, the undersigned, living ......... miles ......... of Oakland postoffice, county of Burt, state of Nebraska, promises to pay to Newlean & Hoard, or order, one hundred dollars, at Oakland, with interest from date until paid, at the rate of ten per cent per annum.   For the purpose of obtaining credit, I certify that I own in my own name in fee simple ......... acres of land in section ..., town ..., range ..., county of ........., state of ........., with ......... acres improved, worth $........., which is not encumbered by mortgage or otherwise, except $......... due ........., 188...   I also own $2,000 worth of personal property over and above all indebtedness and exemptions.   For value received, I, the undersigned, do hereby sell and mortgage unto the payee hereof, to secure the payment of the above described note, one Moline spring wagon, one Henney top buggy, one Deere, Wells & Company top buggy, all with poles, two sorrel horses, bald face, eight and nine years old, now in my possession.   Provided that if the undersigned shall pay the said debt, then this mortgage shall be void.   In case of default, I authorize the said mortgagee to seize and sell the said property at public or private sale, as they may elect, and pay the said debt with expenses incurred; or if the mortgagee shall at any time feel unsafe or insecure, they may seize and sell, as aforesaid, the property.   Sale to take place at Oakland, Nebraska.   If from any cause said property shall fail to satisfy said debt and expenses, I covenant and agree to pay the deficiency.

"  OLE OLSON.   '

"Witness:   A. D. PETERSON."

The Henney buggy proved defective and was returned to the plaintiff in error, and the third of these instruments was canceled, and the balance, being thirty dollars, was to be indorsed upon one of the other instruments. The indorsement was not made, however. About the first of December, 1886, the plaintiff in error obtained possession of the horses and buggies upon the pretext that he felt insecure.

The defendant in error thereupon brought an action of replevin, upon the ground that he was entitled to the possession of the property at least until default was made in the payment of one of the instruments, and on the trial of the cause a jury was waived and the cause submitted to the court, which found in favor of the defendant in error and rendered judgment accordingly.

The testimony tends to show that Olson was engaged in the livery business at Oakland, Burt county; that his receipts from his business were from $5 to $7.50 per day; that he purchased the buggies in question for use in his business, and the plaintiff was well aware of that fact; the lien upon the horses was taken as additional security, that in case Olson made default in the payment of the money the plaintiff would be amply secured.

The plaintiff claims that under the clause in the instrument above set out, " If the mortgagee shall at any time feel unsafe or insecure they may seize and sell, as aforesaid, the property," he had the right to take possession at any time he saw fit, and that this right did not depend upon the facts, but upon his own pleasure or election.

A chattel mortgage, like any other contract, is to be construed together, and the object is to ascertain with precision the mutual understanding of the parties. The whole instrument is to be viewed and compared in all its parts so that every part of it may be made consistent and effectual. 2 Kent's Com., 555. *People, ex rel., v. Gooper*, 3 Neb., 285. *Barton v. Fitzgerald*, 15 East., 541.

*Merrill v. Gore,* 29 Me., 346.    And the court in construing the contract should give effect to the provisions which carry out the evident intent of the parties.  Here we find in this case credit was given, interest provided for in favor of the mortgagee, and an implied agreement on his part that, if the mortgagor did not impair the security, he should be entitled to retain possession of the property until the money became due.    This clearly was the contract and the intent of the parties, and the mortgagee should not be permitted to violate it.    The words, "if the mortgagee shall at any time feel unsafe or insecure," do not mean that he may arbitrarily and without cause declare that he feels unsafe or insecure.    If this were so a mortgagee might induce a mortgagor amply to secure a debt upon the implied promise that credit for a certain length of time would be given, and the instant after receiving the mortgage declare that he felt unsafe and insecure and proceed at once to foreclose the mortgage.    Such a rule would place the mortgagor entirely at the mercy of the mortgagee, and in many, if not most cases, deprive the mortgagor of the very means by which he could pay the debt.    To justify the mortgagee, therefore, in his action in declaring that he feels unsafe and insecure, where there is an implied contract that the mortgagor shall remain in possession, the mortgagor must be about to commit, or has committed, some act which tends to impair the security; and unless such facts exist the right does not become operative.

The judgment of the district court, therefore, is clearly right, and is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.