J. I. CASE PLOW WORKS V. JACOB MARR ET AL.

[FILED OCTOBER 14, 1891.]

1. **Chattel Mortgages:** CLAUSE ALLOWING SEIZURE BY MORT-
   GAGEE. A clause in a chattel mortgage providing that the
   mortgagee may, at any time he feels insecure, treat the debt as
   due and take and sell the property, will not authorize the seiz-
   ure and sale of the property unless the mortgagor is about to do,
   or has done, some act which tends to impair the security.
2. **The evidence** examined, and *held*, not to sustain the verdict
   and judgment.

ERROR to the district court for Hitchcock county. Tried
below before COCHRAN, J.

*George E. Banks,* for plaintiff in error.

*J. W. Cole, contra.*

NORVAL, J.

This is an action in replevin brought by the plaintiff in
error against Lorenzo Marr to recover the possession of a
threshing machine, horse-power, and attachments. The
property was taken under the writ, and the possession thereof
delivered to the plaintiff. Before the trial, Jacob Marr in-
tervened, claiming title to the property adverse to both the
plaintiff and the defendant Lorenzo Marr. The case was
tried to a jury, who returned a verdict in favor of Jacob
Marr. The plaintiff's motion for a new trial was over-
ruled, and judgment rendered on the verdict.

In 1888, the defendant Lorenzo Marr was engaged in
the farm implement and machinery business at Culbertson,
and was agent for the sale of J. I. Case Threshing Machine
Company's implements and machines. B. Conway was in
his employ as salesman and general clerk to assist in the
business.

On August 8, 1888, said Lorenzo Marr, defendant, as agent for said J. I. Case Threshing Machine Company, sold to his son, Jacob Marr, co-defendant, and Henry Stein and George Hizenrater the threshing machine, horse-power, and attachments in controversy and took in payment three notes of $226 each, due respectively December 1, 1888, December 1, 1889, and December 1, 1890. These notes were secured by a chattel mortgage on the machine, etc. Each note had a property statement on the back, that the makers thereof had property of the aggregate value of $5,500, which property statement was given "For obtaining credit," as additional security for the payment of the notes.

Upon settlement of L. Marr with the J. I. Case Threshing Machine Company these notes were turned over to L Marr in payment of his commission for this and other sales, who then assigned one-half interest in said notes to J. I. Case Plow Works to secure payment of his debt to it, and the other half interest in said notes he assigned to B. Conway for his services as clerk.

The machine was used during the season of 1888 and was then left uncleaned and exposed to the elements without cover or protection of any kind until April 13, 1889, when Conway took possession for the plaintiff under the chattel mortgage and left the property in care of L. Marr pending advertisement and sale. Afterwards L. Marr refused to surrender possession to the plaintiff, and this suit was then brought.

The note first falling due has been paid, and neither of the other notes had matured when action was commenced. The plaintiff claims the right to the possession of the property by virtue of the mortgage, under the following provisions therein: .

"If any attempt shall be made to remove, dispose of, or injure said property, or any part thereof, by the said parties of the first part or any other person, or if the said parties

of the first part do not take proper care of said property, or if said party of the second part shall, at any time, deem itself insecure, then, thereupon, and thereafter it shall be lawful, and the said first parties hereby authorize the said second party, its successors and assigns, or its authorized agent, to treat the debt hereby secured as fully due and payable, and to take said property wherever the same may be found, and hold, or sell and dispose of the same, and all equity of redemption at public auction, or private sale," etc.

Counsel for plaintiff in error contends that the above provision in the mortgage vested in the plaintiff the absolute right to take possession of the property at any time, and that its authority so to do does not depend upon its having reasonable grounds for deeming itself insecure. Counsel cites a number of decisions from courts of last resort of learning and respectability to sustain his position. The question, however, is no longer an open one in this state. At the January term, 1888, in *Newlean v. Olson*, 22 Neb., 717, it was ruled that a provision in a chattel mortgage that " If the mortgagee shall at any time feel unsafe or insecure he may seize and sell," etc., does not authorize the mortgagee to arbitrarily seize and sell the the property before the debt is due, but that the mortgagor must have done, or is about to do, some act which tends to impair the security to justify the mortgagee in taking such a step. The question was again before the court at the last term, in *Lichtenberger v. Johnson*, 32 Neb., 185, and the same rule was adhered to.

Was the plaintiff justified, under the evidence, in taking possession and selling the property? The proofs show that the machine was run one season by the mortgagors, and then left uncovered and exposed to the weather until taken possession of by the plaintiff in the spring of 1889; that one of the mortgagors, George Hizenrater, abandoned the machine in the fall of 1888, and left the country; that

Jacob Marr, another of the mortgagors, in April, 1889, sold his farm and made a bill of sale of his personal property, and went to Colorado; that Henry Stein, the remaining mortgagor, requested the agent of the plaintiff to take the property and sell it under the mortgage, which request was complied with, and the property was sold, the plaintiff being the purchaser.

B. Conway, the agent of the plaintiff, testified that the defendant Jacob Marr told him the machine was a curse to him from the time he got it; that he was going to go away and leave the machine, and that the witness might do as he pleased with it.

It is also stipulated that Nathaniel Hewitt, if present, would testify that Jacob Marr had said to him that he had relinquished all title and interest in and to the property to the plaintiff herein, and that he was going to Colorado to stay.

Jacob Marr denies under oath of making the above statement to Conway and Hewitt, and testified that he only went to Colorado to work.

We are satisfied that the plaintiff was justified in taking the property under the mortgage and selling it. The leaving of the property exposed to the weather for months depreciated the security, and was a violation of the provisions of the mortgage. There is no dispute but that Hizenrater, one of the makers of the notes, had left the country, and that Mr. Stein, another of the mortgagors, authorized the plaintiff to do just what was done. The plaintiff acted in the best of faith. He bid in the property for $60, and afterwards sold it for $500. This last amount is applied upon the notes. The verdict of the jury is unsupported by the evidence.

The defendant Jacob Marr claims that, upon the face of the pleadings, the issues stand admitted in his favor. The petition alleges ownership and right of possession of the property in the plaintiff at the commencement of the action,

and that the same is wrongfully detained by the defendant. Jacob Marr answered denying the averments of the petition, and then sets up ownership in himself, and that the plaintiff had wrongfully taken possession of the property. No reply was necessary, besides the case was tried by both parties in a manner entirely inconsistent with the theory that one was necessary. There was no variance between the allegations of the petition and the proofs as to the ownership of the property.

The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.