SOLOMON C. ALLEN V. JOSEPH CERNY.

FILED MARCH 18, 1903.   No. 12,665.

1. Chattel Mortgage: CONSTRUCTION OF LANGUAGE. The words "feels unsafe and insecure," in a chattel mortgage do not mean that the mortgagee may exercise an arbitrary discretion in the premises, but the mortgagor must be about to do or must have done some act which tends to impair the security of the mortgagee in order that the latter's right to take possession may become operative. *Newlean v. Olson,* 22 Neb. 717.

2. ———: SALE OF CHATTELS BY MORTGAGOR: RIGHT OF MORTGAGEE. Where the mortgage by its terms provides for a seizure of the property if it or any part of it is disposed of or taken out of the county without the mortgagee's assent, a sale in the open market of a substantial part of the wheat covered by the mortgage, without the mortgagee's assent, and against his express prohibition, will entitle the mortgagee to recover possession of enough of the remainder to satisfy his claim.

3. Peremptory Instruction, Erroneous. It is error to instruct a jury to return a verdict for defendant where there is any competent evidence adduced which, if believed by the jury, would support a verdict for plaintiff. *Habig v. Layne,* 38 Neb. 743.

ERROR to the district court for Butler county: SAMUEL H. SORNBORGER, DISTRICT JUDGE. *Reversed.*

*Arthur J. Evans, E. W. Hale* and *Roy M. Harris,* for plaintiff in error.

*Matt Miller* and *Hastings & Hall, contra.*

HASTINGS, C.

This case is a replevin suit begun by plaintiff in error in the district court for Butler county on August 19, 1901. Plaintiff's petition sets out a special ownership in 2,000 bushels of wheat grown on the east half of section 31, town 15, range 2, in that county. He alleges a special ownership by reason of a chattel mortgage, executed June 8, 1901, to secure payment of a note for $800, dated December 13, 1900, and due January 1, 1902; that the mortgage covered 150 acres of wheat, 110 acres of corn and 40 acres of oats, on the land before mentioned. Plaintiff says that he is the owner of the mortgage and note; that the same was given for the rent of the land; that no part has ever been paid and at its maturity, on January 1, 1902, there would be due him upon it the full sum of $800; he alleges that the 150 acres of wheat has matured and been harvested and threshed; that the amount of wheat was about 4,000 bushels; that when threshed it was stored in the barn, house and corn-crib on the farm; that by reason of the mortgage he had a lien upon the whole of said 4,000 bushels of wheat; and that the 2,000 bushels replevied is a part of that grown upon the said 150 acres, and was embraced in the mortgage. It is alleged that the mortgage contained a clause that if the defendant "does not take proper care of said property, or if said party of the second part shall deem himself or themselves insecure, or in case of said first party attempting or permitting an attempt to injure or dispose of, or remove from said county of Butler," the property described or any part of it, it should be lawful for the mortgagee to take immediate possession of it wherever found, and sell it at public auction or private sale, or so much of it as would suffice to pay the amount due or to become due, with unliquidated damages, not to exceed ten per cent. of the principal and interest, and all

reasonable costs of keeping, advertising and selling the property. The petition alleged that, by reason of the partial failure of the other crops included in the mortgage, they were of little value; that by reason of the threshing of the wheat and placing it in bins, its character and description had been so far changed that plaintiff's mortgage, and the public record of it, were no longer notice of plaintiff's interest in it; that defendant had refused to give any specific lien on the wheat in the bin to secure the note, though requested so to do, and had wrongfully and unlawfully disposed of and sold a part of the wheat without plaintiff's knowledge or consent, and was then threatening and attempting to sell, mortgage, dispose of or incumber the rest of the wheat; that the co-maker of the promissory note had died insolvent the preceding May, and that defendant was insolvent; that plaintiff deemed himself insecure, and the conditions of the chattel mortgage had been broken, and he was entitled to the possession of the wheat and had demanded the same, which had been refused. A copy of the chattel mortgage was attached to the petition. The affidavit conforms substantially to the statements of the petition. Bond was filed, and 1,839 bushels of winter wheat and 98 bushels of spring wheat were taken by the sheriff and delivered to the plaintiff. Defendant denied all the allegations. At the trial, upon the close of plaintiff's evidence, defendant asked a peremptory instruction for a verdict in his favor, which was granted. During the progress of the trial it was agreed that the value of the wheat at the time it was taken was $1,022.05. It was further agreed that on January 1, 1902, its value was $1,215.69. It was further agreed that the wheat had been sold by plaintiff's agent and could not be returned. The instruction for a verdict was asked on the ground that the petition did not state facts sufficient to constitute a cause of action, and also that the evidence was insufficient to show any right of recovery. The motion was sustained upon the second ground, and the jury was instructed to render a verdict for defendant, but no particular sum was stated.

The jury found the right of property and right of possession in the wheat at the beginning of the action was in the defendant, and that it was of the value of $1,057.82, and assessed defendant's damage by reason of plaintiff's taking the property at $193.64. This verdict was rendered February 20, 1902. Defendant was required to remit $35.77 from the value of the wheat as found by the jury, and judgment was entered for its agreed value, $1,022.05, $193.64, the damages found by the jury, and costs in favor of the defendant. Motion for new trial was overruled, and the plaintiff brings error to this court. The sole complaint is that, under the evidence tendered by the plaintiff at the trial, defendant was not entitled to any such instruction for a verdict; that the amount of damages assessed by the jury is excessive; and errors of law occurring at the trial which were excepted to.

The real questions in the case seem to be whether the circumstances disclosed by plaintiff's evidence show a reasonable ground for his action in deeming himself insecure and in proceeding to seize the mortgaged property before the maturity of his note, and a breach of the conditions of the mortgage by a sale of a substantial part of the mortgaged property. The facts, as shown by the evidence, are briefly as follows: The wheat raised on the farm, about 3,500 bushels, was threshed out during the last six days of July, and stored in the farm buildings. About 500 bushels were placed in the house. Defendant at once began selling wheat. On July 31, he sold and delivered 104 bushels at Foley. Evidently, it was this wheat, as defendant had not yet threshed the wheat on another farm rented by him. On August 7 he contracted to sell 150 bushels more at the same place. On August 12 plaintiff's agent and an interpreter and an attorney visited defendant. He admitted these two sales, and declared his intention to sell more. He was told that any further sales of the mortgaged wheat were forbidden. Defendant stated that he must sell this wheat to make payments on some land. This last statement was stricken out by the court over plaintiff's

objection, as was a similar statement of defendant to the witness Welch.   August 15 defendant sold and delivered to the witness Steiner 202 bushels of wheat, and on August 17, 105.   These facts all coming to plaintiff's knowledge on the last-named date, plaintiff's agent, accompanied by an attorney, demanded 2,000 bushels of the wheat, or a new mortgage covering threshed wheat specifically, or a deposit of enough proceeds of the wheat to make plaintiff safe, if was to be sold.   This was refused, and on the 19th fifty-five bushels more were delivered to Steiner by defendant.   The same day this action was brought, and no wheat found in the room of the house where 500 bushels or more had been stored at the threshing.   It appears that there were about 800 bushels of oats which were also subject to the mortgage of plaintiff.   There were 120 acres of corn, which is stated to have been in a very unsatisfactory condition at that time.   Defendant had several teams and a number of cattle.   The sheriff testifies that he had shortly before held an execution against him, under which he could not find property upon which to levy.   Defendant's stock was covered with mortgages.   Testimony of plaintiff and his attorney that they deemed plaintiff's claim insecure was tendered and refused.   Probably the latter testimony was unnecessary, as the commencing of the action itself was a solemn declaration of the same thing.   The rulings of the trial court excluded all evidence of the offers of plaintiff to accept a new mortgage upon a part of the wheat in the bin, and permit a sale of the rest if defendant wished to do that.   As tending to show the good faith of plaintiff and the intentions of defendant with reference to disposing of the rest of the wheat, it would seem that this evidence should have been received.   As it was duly tendered, and much of it taken and afterwards stricken out, it should be considered in determining whether or not there was enough evidence to take the case to the jury.   The trial court seems to have thought that, as long as there was actually enough left to satisfy plaintiff's claim, he had no right to take any steps in anticipa-

tion of threatened action of defendant. This would not seem to be the case, even with only the clause in the mortgage providing for a foreclosure, if the mortgagee should deem himself insecure. In *Case Plow Works v. Marr*, 33 Neb. 215, which sustains the taking of a threshing machine, because it was left unhoused, and one of the makers of the notes for it had left the state, the first note was paid, and the other two were only for $226 each. The machine was sold for $500, but the taking of it before either of the notes was due, in anticipation of possible loss, is upheld.

Of course there can be, in this state, no arbitrary discretion in taking property before a mortgage is due. The mortgagee, in taking the contract payable at a future time, impliedly agrees to await that time. *Newlean v. Olson*, 22 Neb. 717; *Lichtenberger v. Johnson*, 32 Neb. 185; *Rector-Wilhelmy Co. v. Nissen*, 35 Neb. 716; *Brown v. Hogan*, 49 Neb. 746. He need not wait, however, till loss is actually incurred before attempting to protect himself.

In the present case, too, there is evidence tending to show that one of the absolute conditions of the mortgage—the disposing of a part of the property—had been broken. It seems clear to us that there was sufficient evidence tendered in this case to require its submission to a jury, and that the learned trial judge was in error in giving his peremptory instruction.

The holding in *Gillilan v. Kendall*, 26 Neb. 82, and *Fines v. Bolin*, 36 Neb. 621, that a mortgage upon growing crops is not notice to any one who buys the same grain in open market after harvest, would be calculated to render the mortgagee uneasy when 500 bushels of the wheat had disappeared within less than three weeks after threshing. The suggestion in *Gillilan v. Kendall* that the evident need which the farmer has for using coarse grains as feed may imply a consent that he may so use them, would weaken the security on the oats and corn, and, upon a consideration of the whole case made, there seems no doubt that plaintiff was entitled to have the good faith of his claim of insecurity, as well as of a disposition of a part of the mortgaged property, passed upon by the jury.

It is recommended that the judgment of the district court be reversed, and the cause remanded for further proceedings.

KIRKPATRICK and LOBINGIER, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.