## ENGLUND v. SOUTHER et al.

(133 N. W. 301.)

**Chattel mortgage — right of mortgagee to take possession when security impaired.**

Evidence examined, and *held*, that it shows the property described in two chattel mortgages had been neglected and placed in jeopardy by the mortgagors,

---

Note.—As stated in the opinion in ENGLUND v. SOUTHER, the courts are not in harmony as to the effect of a power conferred upon a mortgagee to take possession

and its value thereby lessened, and the debts secured rendered insecure, so that, under the terms of the mortgages, the mortgagee was justified in commencing foreclosure proceedings before the apparent maturity of the debt.

Opinion filed October 10, 1911.   Rehearing denied November 18, 1911.

Appeal from District Court, Ward county; *Goss,* J.

Action by J. A. Englund against Preston Souther and others.   From a judgment for plaintiff, defendants appeal.

Affirmed.

*F. B. Lambert* and *F. A. Leonard,* for appellants.

*George N. Gray,* for respondent.

SPALDING, J.   This action was brought to foreclose two certain mortgages given by the defendants upon a farm engine and separator, certain crops, and horses, as security for the payment of the purchase price of the engine and separator, as evidenced by one note for $600 and another for $400, bearing date September 6, 1907, and due, respectively, November 1, 1908, and November 1, 1907.   Upon the last-mentioned note, payments had been made, aggregating $297, prior to the commencement of foreclosure proceedings.

The answer to the complaint admits the ownership of the notes, that they are unpaid, except as to the $297, but denies that any sum was due thereon at the time this action was commenced or tried, and alleges, on the contrary, that, on the 29th of October, 1908, the plaintiff, for a valuable consideration, contracted and agreed with the defendants that the time for the payment of the principal sum named in said notes, with interest, should be extended until the 1st day of November, 1909, and that such agreement was then in full force and effect.   The trial court found that there had been such an agreement for an extension of payment, but that a portion of the security had been removed from the county of Ward, without the knowledge or consent of the plaintiff, and

of mortgaged chattels when he deems his security impaired or in danger of being impaired.   Some cases hold it to be an absolute right to be exercised at pleasure, but the weight of authority, as shown by a careful review of all the authorities in notes in 23 L.R.A. 780 and 19 L.R.A.(N.S.) 915, requires that such right shall be exercised in good faith, based upon such reasonable apprehension of danger as will cause a reasonable man to act.

that defendants had in various ways abused, neglected, and injured the property covered by the mortgages; that the same was being scattered and depreciated in value, and that the plaintiff had elected to take possession thereof under the provisions of his mortgages, entitling him to do so for foreclosure purposes; and that he had declared the whole debt due and payable December 18, 1908; and that such property was seized on a warrant of foreclosure. The provisions referred to and contained in such chattel mortgages are as follows: "And it is hereby agreed that if default be made in the payment of said debt, or any part thereof, or the interest thereon, or if any attempt be made to remove or dispose of said property, or if at any time said mortgagee shall deem himself insecure, that thereupon either himself or his agents are hereby authorized to enter upon the premises where the said property may be, and remove and sell the same at private or public sale," etc. And: "If default be made in the payment of said debt or any part thereof, or any attempt be made to remove the said property or any part thereof from the place where it now is, or to dispose of the same or any part thereof without written consent of the said mortgagee or........, his administrator or assigns, or if at any time the said mortgagee, heirs, ........, administrators, assigns, shall deem the said debt unsafe or insecure, that he is hereby authorized, either by ........ or agent, to enter upon the premises where the said property may be and take possession and remove and sell the same," etc.

The action was tried by the court, findings made, and judgment entered. At such trial a stipulation was made that the only questions for determination by the court were whether the note and mortgages sued upon and foreclosed were, in the fall of 1908, extended until the fall of 1909, and, if so, whether the plaintiff was justified in taking possession of the security and commencing foreclosure proceedings thereon, on the 19th day of December, 1908.

The case is before us for trial *de novo* of the question of facts regard-the grounds for the mortgagee deeming himself insecure. The other findings are not here for review. Hence they must be taken as warranted by the evidence. Among these is that the time for payment of the debt was extended to November 1, 1909. The facts necessary to an understanding of this action may be summarized as follows: That the defendants, to secure the payment of the notes described in the complaint,

gave a chattel mortgage on certain crops to be harvested during the year 1907, upon a second-hand farm engine and separator and attachments, one half of the earnings of such machine until the debt should be paid, and also upon four horses. The mortgage contained a provision that the horses should be released therefrom, if the $400 note was paid in full in the fall of 1907.

It appears that the parties defaulted, with the exception of a payment of $297, in the fall of 1907, on the $400 note; that the mortgagee sent an agent to the parties, with instructions that the notes could not be carried longer, unless real estate security should be given. In violation of his instructions, he took a new chattel mortgage,— the mortgage, dated October 29, 1908, by defendants Louis and Horatio Souther,— covering four horses, one five years old, one eight, and two twelve, owned by Horatio Souther; and the court found that there was an extension of one year at the time this mortgage was given.

The proof shows that at the time the new mortgage was given the engine was at or near the farm of one of the mortgagors. One of them lived on the eastern edge of Williams county, and the other close by, in Ward county. Immediately after the giving of that mortgage, such engine was moved to a coal mine in Williams county, more than 35 miles away, and put in use there, pumping water from the mine, and that some of the horses were taken from Ward county to the mine for employment, all without leave of the mortgagee. It also appears that at the time possession was taken the horses were suffering from a disease known as mange; that they were in very poor condition, evidencing lack of feed, which was conceded by one of the mortgagors, and hard work. They were intending to use the engine all winter in pumping water. It developed afterward that one of the horses was so reduced that it could not be driven into town, and was of no value. The evidence on one side tends to show the value of seven horses at about $35 each, and the value of the remaining security, aside from the engine, as nothing, and the value of the engine at about $400. On the other side, testimony was received to the effect that one pair of horses was worth $300, and three others $100 each. We think, however, from the evidence as to the condition and character of the horses, that the court was justified in concluding that they were not worth more

than the smaller figures, and that they had greatly depreciated in value by reason of hard work, poor care, and feed.

It would then appear that the plaintiff, when the action was commenced, had security on some horses in very poor condition and of little value, on an old farm engine which the defendants had used during the threshing season, without turning over to the plaintiff, as they had agreed to do, any considerable part of the proceeds, and being used in a most hazardous business for the winter season. It was liable to freeze up at any time, and be ruined in consequence.

This is all of the evidence that it is necessary to consider. The question arises whether, under these facts and the law applicable, the plaintiff could legally proceed to take possession of the security and foreclose his mortgages at the time he did so. There is much conflict in authorities as to the legal effect of the provisions contained in so many chattel mortgages, authorizing the mortgagee to take possession of the security, declare the whole debt due, and proceed to sell under foreclosure, whenever he may deem himself insecure; there being no less than three well-defined rules on the subject.

Under one rule, it is held that no proof is required to show that he has grounds to consider himself unsafe, as the legal presumption is that such was the fact, and that he is made the sole judge thereof; that it rests in him an absolute discretion on the subject, not depending upon the fact of reasonable grounds for deeming himself insecure. In Wisconsin it is held that when parties have made their own contract, the courts will not set it aside and make a new one for them, and that to consider and decide upon the reasons of the mortgagee for deeming himself insecure would be to do so. Cline v. Libby, 46 Wis. 123, 32 Am. Rep. 700, 49 N. W. 832.

The second rule is that the mortgagee has a right to take possession, if he had good reason to think, and did think, himself insecure; or, what is equivalent, that he must have a reasonable apprehension of insecurity or danger of losing his debt by delaying its collection.

The third rule seems to be that the mortgagee must act in good faith and upon facts rendering his debt insecure in fact. See Jones, Chat. Mortg. § 431, and authorities cited; 2 Cobbey, Chat. Mortg. §§ 856, 857, 858, and 859; 7 Cyc. 12. The first rule prevails in Iowa, Kansas,

New York, and Wisconsin, while the third is adopted in Nebraska and South Dakota.

We need not in the case at bar determine which of these rules should be applied in this state; for it is sufficient to say that, in our judgment, the evidence clearly justified the plaintiff in taking possession and foreclosing under either of such rules. He certainly had reason to deem himself insecure, by reason of the condition of the horses and the use which the engine had been put to, and we are satisfied he was insecure in fact. In Nebraska the courts adhere to the third rule; but in J. I. Case Plow Works v. Marr, 33 Neb. 215, 49 N. W. 1119, that the fact that a farm engine was left exposed to the elements through the winter justified the mortgagee in taking possession, under a clause identical in effect with those we are considering. See Allen v. Vose, 34 Hun, 57. We conclude that the judgment of the District Court must be affirmed.

Goss, J., being disqualified, did not sit in this case; FRANK FISK, District Judge, sitting in his place. MORGAN, Ch. J., did not participate.