GEORGE SVETKOVIC, APPELLEE, v. UNION PACIFIC RAILROAD COMPANY, APPELLANT.

FILED FEBRUARY 27, 1914.   No. 17,633.

1. **Appeal:** CONFLICTING EVIDENCE. In an action for personal injuries, where the evidence as to the negligence of the defendant and the contributory negligence of the plaintiff is conflicting, the verdict

95 Neb. 24

of the jury will not be set aside, unless it is shown to be clearly wrong.

2. **Railroads:** ACTION FOR PERSONAL INJURIES: INSTRUCTIONS. The refusal of the district court to charge the jury that, unless they found that the bell on the defendant's engine was not ringing when the accident occurred, they should find for the defendant, was not reversible error under the circumstances shown by the evidence.

3. **Damages:** INSTRUCTIONS: HARMLESS ERROR. The use of the word "permanent" in an instruction relating to the measure of damages, where from the amount of the verdict it clearly appeared that the jury considered the plaintiff's injuries were of a temporary nature, was error without prejudice.

4. **Evidence:** EXPERT WITNESSES: CROSS-EXAMINATION. It was not error to exclude the evidence of the doctor as to the nature of his treatment of the plaintiff's wound as improper cross-examination, where the doctor was called by the plaintiff to testify solely as to the nature and extent of the injury at the time it occurred.

5. ———: DEMONSTRATIVE EVIDENCE. It was proper for the court to refuse to require the plaintiff to submit the scar of a wound, which he received when a child about 40 years before the trial, to the inspection of the jury.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Affirmed.*

*Edson Rich, E. H. Crocker* and *John A. Sheean,* for appellant.

*Smyth, Smith & Schall, contra.*

BARNES, J.

This is an appeal from a judgment of the district court for Douglas county rendered on a verdict for $1,000 in favor of George Svetkovic against the Union Pacific Railroad Company, in an action for injuries to the plaintiff caused by being struck by one of defendant's switch engines on or about November 14, 1908, while he was working for the Cullen-Friestedt Company in filling a sewer trench, which the last named company was constructing in the defendant's railroad yards in the city of Omaha.

It appears that the company for which the plaintiff was working was engaged in constructing a sewer across the yards of the defendant company. The sewer ran in a general east and west direction, and across several switch tracks of the defendant company, which ran in a general north and south direction through its yards.   As the sewer trench was excavated under the tracks, temporary bridges were constructed to hold the tracks up until the sewer was finished and the trench refilled.   Among the tracks crossed by the sewer was one known as No. 26, and it was near the bridge carrying this track over the sewer that the defendant's switch engine struck and injured the plaintiff.

As above stated, the plaintiff was engaged in filling the sewer trench, and was working close to and on the west side of the track in question.   The defendant's switch engine attached to a string of cars pushed them northward on the track above mentioned, and after crossing the sewer some distance the. engine was cut off and returned southward through the yards.   After the engine passed northward with the string of cars over the sewer, plaintiff resumed his work, and was stooping down close to the track shoveling dirt into the trench when the switch engine returned to the south, and plaintiff, failing to discover its return, was struck by the footboard of the engine and received the injuries of which he complained.

The plaintiff testified that no warning was given of the approach of the switch engine at the time he received his injuries, and, owing to the pile of dirt which was being shoveled into the sewer trench, he was unable to see the engine as it approached, and this was the cause of his injury.

Defendant's witnesses testified that the bell on the switch engine in question was ringing at the time it passed over the trench to the north, and continued ringing until the train of cars was stopped; that the bell was ringing when the engine was cut off from the train of cars, and continued ringing on its return south until it passed the point where the plaintiff was struck and injured.   It is not con-

tended that any other warning than the ringing of the bell
was given by the defendant of the approach of its engine
prior to the time it struck the plaintiff. At the close of
the evidence the defendant requested the court to direct
the jury to return a verdict in its favor. The request was
refused, the cause was submitted to the jury, and a ver-
dict was returned as above stated.

It is defendant's first contention that the court erred in
refusing to direct the jury to return a verdict in its favor.
On the question of the defendant's negligence there was
a conflict in the testimony. It is conceded that the en-
gine struck the plaintiff on the head, knocked him down,
and severely injured him, and if the jury believed plain-
tiff's testimony it was justified in finding that the railroad
company did not discharge its duty to him, but was negli-
gent in failing to do so. Plaintiff was rightfully at the
place of the accident. He was an employee of the company
that was constructing the sewer in defendant's yards, and
was there by the invitation of the defendant company to
do the work in which he was engaged at the time he sus-
tained his injuries, and it was the duty of the defendant
company to look out for him, and operate its locomotives
with reference to his presence at the place where the acci-
dent befell him.

It may be that the testimony of the defendant's wit-
nesses was more credible than the plaintiff's evidence, but
that was a question to be determined by the jury, and not
by the court. *Habig & Spiler v. Layne*, 38 Neb. 743; *Mc-
Kinney v. Hopwood*, 46 Neb. 871; *Allen v. Cerny*, 68 Neb.
211. But, if it be assumed that the bell upon the defend-
ant's engine was ringing, still that would not be adequate
warning; for, according to the testimony, engines were
running to and fro in the yards and bells were ringing at
all times during working hours, and it would be difficult,
if not impossible, for the plaintiff to distinguish which
track the engine was on by reason of the ringing of the
bell. In place of warning him of danger, plaintiff might
consider it an assurance of safety. No one was stationed
at or near the excavation to warn the men who were work-

ing there of the approach of trains, and if they were to
depend alone upon the ringing of the bell it would take all
their time and attention to avoid danger, and little, if any,
progress could be made in their work. Again, it appears
that no one was stationed upon the front running-board
of the engine to give warning of its approach to the men
who were working in the yards, not as employees of the
company, but as laborers for an independent contractor,
and who were there by the invitation of the defendant com-
pany. We are therefore of opinion that the court did not
err in refusing defendant's request for a directed verdict.

It is contended that the court erred in refusing to give
to the jury instruction No. 5, requested by the defendant.
By this instruction the court was requested to charge the
jury that, unless they found that the bell was not ringing,
they should find for the defendant. From what we have
already said, it appears that the giving of this instruction
would have been clearly erroneous.

It is also contended that the court erred in giving the
jury instruction No. 14. It is argued that the instruction
was rendered erroneous by the use of the word "perma-
nent" in respect to the measure of damages. We quote
the following excerpt from the instruction: "In ascer-
taining what damages plaintiff has sustained by reason
of his injuries, you are to take into consideration the char-
acter and extent of such injuries as shown by the evidence,
whether permanent or temporary, his physical pain and
mental suffering, if any, which the evidence shows he has
endured, or which it is reasonably certain from the evi-
dence he may endure in the future as a natural and di-
rect result of such injuries, taking into consideration the
age of the plaintiff at the time said accident happened,
and his reasonable expectancy of life, and the loss of time
occasioned by said injury, and the impairment of plain-
tiff's earning capacity, if any such impairment you find
from the evidence."

It is argued that there was no evidence tending to show
that plaintiff's injuries were permanent, but on the con-
trary there was evidence that they were not permanent.

It was shown by the testimony of Doctor Coulter that plaintiff received a severe injury and a shock to his nervous system, which had existed for a period of something like three years, and from which he was suffering at the time of the trial. The injury inflicted was described by Doctor Harris, in substance, as follows: I then found a wound about the hair line and running back over the top part of the head—two pyramidal flaps of the scalp about $2\frac{1}{2}$ or 2 inches on each side being torn loose from the skull exposing quite an ugly-shaped wound; the whole space between these lines being uncovered next to the bone. The wound was cut down the full depth of the scalp, which is $\frac{3}{8}$ to $\frac{1}{2}$ inch in thickness. The edges of the wound were not sharp like a sharp-edged instrument, like a knife or a razor would make, but they were well-defined, showing a rapid tearing like a hard substance would make. Whatever made it had a good deal of force behind it. The wound was bleeding; his whole scalp or hair was filled with clotted blood, cinders and dirt. I don't remember how many stitches we put in, nothing but drawing the flaps up to the proper place. It healed up, and did not leave a deep scar.

Doctor Coulter further testified, in substance, that the plaintiff should have proper treatment for his nervous condition, which would consist of the rest cure, to be put in the hospital, and massaged over the parts where he complained of the pain; to have baths and proper medicines and diet, and be kept away from friends and anything that would irritate and bring to his mind these conditions; that this treatment would have to be applied for several months at least before a cure would result, and would require the daily attendance of a physician during the time he was in the hospital.

The plaintiff testified that his head hurt him in the winter time, but did not hurt him much in the summer. He said: "I could work if I had some kind of an easy job. It hurts me now as I sit on the stand. I wear my cap and rags when I go to bed and if the rags fall off my head at night it causes me pain and I wake up."

With this testimony in the record, it is difficult to say whether the injury was permanent or not; but, assuming that the instruction was wrong, it was error without prejudice. Compensation is the measure of damages—that which would make good the plaintiff's loss. In view of the amount allowed by the jury, the verdict was not excessive, and might have well been fixed at that amount, although there was no evidence in the record tending to show the injury permanent.

It is further contended that the court erred in refusing to permit Doctor Harris to testify, on cross-examination, regarding his treatment of the plaintiff after the injury. It appears from the record that Doctor Harris was called by plaintiff for one purpose only, which was to show the extent of the wound shortly after the accident occurred, and the testimony sought to be brought out on the cross-examination in no way tended to dispute the fact of the injury. It appeared that the plaintiff had a scar on the back of his head which was caused by an injury when he was a child. Defendant's counsel requested Doctor Aikin to point out that scar and exhibit it to the jury. The plaintiff had not pointed out the scar on the back of his head, nor had he brought that scar to the attention of the jury in any other way, and it is difficult to see how a scar on the back of plaintiff's head, which was produced by an injury some 40 years before, could have in any manner aided the jury in determining the extent of the injuries received by the plaintiff for which this suit was brought. Counsel for the plaintiff also made this fact plain by stating that the action was not based upon the old injury, and that he claimed nothing whatever on that account. It therefore seems clear that all of that evidence was properly excluded.

The wound which plaintiff received from his contact with the defendant's engine was upon the front and top part of his head. It was entirely independent from, and in no way depended upon, the condition of the scar on the back of the plaintiff's head, and therefore it was proper for

the court to refuse the defendant's request to have the jury examine it.

The record discloses that this case has been twice tried. Every question in it seems to have been fairly and clearly submitted to the jury. The verdict is not excessive, and, finding no reversible error in the record, the judgment of the district court is

AFFIRMED.

LETTON, ROSE and HAMER, JJ., not sitting.