[No. 11996.   Department One.   January 8, 1915.]

E. N. FITCH, *Appellant*, v. HENRY GOETJEN *et al.*,
*Respondents.*[1]

CHATTEL MORTGAGES—FORECLOSURE BEFORE MATURITY OF DEBT—
REASONABLE CAUSE.   Reasonable cause to believe that mortgaged
horses and farm machinery will be lost or removed, justifying imme-
diate action for the recovery of the debt under the provisions of
Rem. & Bal. Code, § 1111, is not shown by the fact that the mortgagee
believed that the property might be stolen and removed by members
of a family in the neighborhood, his suspicions being based only
upon gossip, rumor, and hearsay and general reputation of the com-
munity for horse and cattle stealing, where it appears that the mort-
gagee, at the time of the execution of the mortgage, had knowledge
of the reputation of the neighborhood and of the intention of the
mortgagors to pasture the horses upon the neighborhood range; that
there had been no change in conditions and reputation of the neigh-
borhood as to horse and cattle stealing; and that the mortgagors
had done nothing themselves to impair the safety of the property
at any time (CHADWICK, J., dissenting).

Appeal from a judgment of the superior court for Okan-
ogan county, Pendergast, J., entered May 7, 1914, upon
findings in favor of the defendants, denying plaintiff's costs,
in an action to foreclose a chattel mortgage, tried to the
court.   Affirmed.

*Smith & Gresham*, for appellant.

*Neal & Neal*, for respondents.

PARKER, J.—The plaintiff, E. N. Fitch, commenced this
action in the superior court for Okanogan county to recover
upon a promissory note and foreclose a chattel mortgage
given by the defendants Henry and Charles Goetjen to se-
cure the same, before maturity of the debt so evidenced and
secured.   The plaintiff rests his claimed right to commence
the action before maturity of the debt, upon the ground of
his alleged reasonable cause to believe that the mortgaged

[1]Reported in 145 Pac. 447.

property would be removed by theft from the jurisdiction of the court, which gave him the right to commence the action before maturity of the debt under Rem. & Bal. Code, § 1111 (P. C. 349 § 25), which reads as follows:

"Where the debt is not due for which the mortgage is given, and the mortgagee has reasonable cause to believe that the mortgaged property will be destroyed, lost, or removed, he shall have the right to an immediate action in the superior court of the county having jurisdiction where the property is situated, for the recovery of his debt, and the court may make any order it may deem fit, in order to secure said property so as to make the same available for the satisfaction of said debt."

There is remaining of this controversy only the question of plaintiff's claim of his right to judgment for costs and attorney's fees in the superior court, the full amount of the principal and interest having been duly tendered by the defendants at the time of the maturity of the debt, and thereafter kept good by deposit in court.

Trial before the court resulted in findings and judgment awarding the plaintiff, as a matter of course, the amount of the tender deposited in court, but denying to the plaintiff judgment for costs incurred in the superior court. From this disposition of the cause, the plaintiff has appealed to this court.

The evidence is not here, the cause being before us for determination upon the findings of fact, which are very voluminous. The controlling facts to be gathered therefrom may be summarized as follows:

On September 9, 1912, respondents executed and delivered to appellant their promissory note for the sum of $650 payable one year from date with twelve per cent interest, at the Okanogan State Bank, Riverside, Okanogan county. To secure the debt thus evidenced, respondents, at the same time, executed and delivered to appellant a chattel mortgage upon certain horses and farm machinery belonging to them. On

August 2, 1913, over a month before the maturity of the
debt, appellant commenced this action in the superior court
for Okanogan county, alleging, in addition to facts consti-
tuting the usual cause of action in foreclosure, facts upon
which he rested his right to commence foreclosure proceed-
ings before the maturity of the debt.  On August 14, 1913,
appellant procured from the superior court an order author-
izing the seizure of the mortgaged property by the sheriff
of Okanogan county and the holding of the same pending
the foreclosure, which was accordingly done.  The property
was thereafter returned to respondents by order of the court
upon their giving bond therefor.  Appellant's claim of right
to commence the foreclosure before the maturity of the debt
is based upon his alleged reasonable belief that the mort-
gaged horses would be stolen and taken out of the country,
his alleged belief being that the property might be so stolen
and removed by members of a family of the neighborhood by
the name of Haley.  The principal facts bearing upon the
cause of such alleged belief were found by the trial court as
follows:

"At the time of the execution of said instruments, the note
and mortgage herein referred to, the defendants had arrived
at the vicinity of Tunk Creek Valley, near the Okanogan
river, and were then engaged in hay harvesting for one
Dougal McAllister, about five miles from plaintiff's ranch,
on said Tunk creek; that defendants' prospective destination,
when leaving the state of Oregon, was British Columbia; that
upon the inducements and persuasions of said plaintiff, said
defendants leased plaintiff's said ranch in the Tunk Creek
Valley, and purchased from said plaintiff, certain hay, farm
machinery and other personal property, for which the note
herein set out was executed, and then and there leased said
plaintiff's ranch for the term of one year from September 9,
1912, and immediately thereafter moved to said leased prem-
ises, and took with them the personal property described in
the mortgage set out in the complaint herein.  . . .  as
an inducement and consideration to defendants for leasing
said premises, plaintiff stated to defendants, that the range

surrounding his ranch was good, and that the Tunk Creek Valley was the best horse pasture in the country, that both the range and water were good and convenient and easy of access to the stock and horses, which defendants had with them, and a part of which they thereafter mortgaged to said plaintiff as security for the payment of their promissory note executed for the purchase price of the personal property hereinbefore referred to. . . . Immediately after the execution of said note and mortgage, defendants moved to plaintiff's ranch and took with them the horses described in said mortgage, together with other horses and property not included therein, and turned said horses onto the range of the commons, in the vicinity of plaintiff's ranch; that plaintiff was present at the time, not having then removed from his said ranch, and had personal knowledge of the fact that said mortgaged horses were being turned out to range on the commons in that vicinity, and made no objections whatever to such act on the part of defendants, in turning said horses onto the public range, and did not then, and had not theretofore, in any manner whatever, informed or advised defendants that there was or would be any danger whatever of said horses being stolen or taken away by thieves, or otherwise. . . . said plaintiff then and there well knew that it was the intention of said defendants to permit said horses to range on the commons in the vicinity of said ranch, except during the winter season, when the same would require feed, and made no objection whatever to such intended acts on the part of defendants, and that said horses did in fact continue to range on the commons, except during the winter season. . . . in the spring of 1913 again turned out upon the commons in that vicinity. That said horses ranged thereabouts and within a radius of from two to three miles from said premises, and watered almost the entire time in Tunk creek, in the vicinity of plaintiff's said ranch; that plaintiff visited said ranch at various times after the execution of said note and mortgage and saw said stock, and was well acquainted with the conditions surrounding the same, and did not, at any time, make any complaint to defendants, or advise them in any manner whatever that said stock was in any danger whatever from thieves . . . That during all the times since the execution of said mortgage, said defendants properly cared for, looked after said mortgaged property,

and caused the same to range within the immediate vicinity of said premises. . . . After the execution of said note and mortgage and lease, the defendants also leased what had for a long time been known as the Haley ranch . . . After said Haley premises were leased by said defendants, they, the defendants, were necessarily upon and at the Haley ranch for the purpose of cultivating and harvesting the crops thereon, and for the purpose of irrigating a portion thereof during the irrigation season, and that defendant, Henry Goetjen, spent and continued to spend a portion of his time at the Haley place, when not engaged in farming or looking after their crops thereon. . . . That after said defendants had moved to said plaintiff's premises, they were advised and informed by plaintiff, that the Haleys had, prior thereto, borne rather a bad reputation for horse and cattle stealing, but that they were better than some of the people who talked about them, and that they were good neighbors, and plaintiff did not, at such time, or at all, advise, state, or indicate to defendants, that there would be any danger of losing any of said horses by reason of their being permitted to range on the commons in the vicinity of said Haleys."

Other findings were made reflecting upon the character and reputation of the Haleys and referring to respondents' association with them, but not otherwise reflecting upon the character or reputation of respondents. The trial court's view of the grounds of appellant's suspicion, is summarized in its findings to the effect that appellant's suspicions were based upon gossip, rumor, and hearsay, and the general reputation of the community for horse and cattle stealing, the court finding, however, that such reputation was well known to the appellant at the time of the execution of the note and mortgage and long prior thereto, but was unknown to respondents at and prior to the execution of the note and mortgage. This reputation of the neighborhood, however, apparently had undergone no change during all this time. Respondents have never done anything or failed in their duty in any respect so as to forfeit their right to hold possession of and use the property until the maturity of the debt.

Other findings, which we regard more as conclusions than findings of specific facts, are to the effect that, at the time of the commencement of this action, appellant honestly believed that he would lose his debt by removal of the property, should he delay action until the maturity of the note; yet the court finds "that the plaintiff, without sufficient cause or excuse, prior to the maturity of the note and mortgage involved in this action, caused the sheriff of Okanogan county, under the order of this court, to dispossess the defendants of the possession, use and enjoyment of the work horses described in said mortgage."

There are many more detailed facts set forth in these voluminous findings, but we think the foregoing is a sufficient summary of the facts controlling the rights of the parties here involved.

In view of the appellant's knowledge of the reputation of the neighborhood for horse and cattle stealing; his knowledge of respondents' intention to allow the horses to go upon the range of the neighborhood in compliance with the apparent usual custom of the country; the apparent lack of any change in conditions and reputation of the neighborhood as to horse and cattle stealing; the fact that respondents did nothing themselves to impair the safety of the property at any time; and the fact that respondents' association with the Haleys seems to be the only new cause for appellant's suspicions; we are of the opinion that the learned trial court correctly concluded that appellant did not have reasonable cause to believe that the mortgaged property would become lost as his security, at the time he commenced this action, and that he therefore commenced it prematurely.

Counsel for appellant invoked the general rule as announced by some courts under statutory or chattel mortgage provisions similar to our statute, that a mortgagee's right to commence foreclosure and cause the mortgaged property to be seized prior to the maturity of the debt depends only upon the mortgagee's good faith and his acting upon probable

cause, and not upon the actual existence of danger of loss of the property as his security.

The Illinois supreme court in *Roy v. Goings*, 96 Ill. 361, 36 Am. Rep. 151, entertained this view in considering a chattel mortgage which by its terms permitted the mortgagee to so proceed prior to the maturity of the debt secured, at any time he should "feel himself unsafe or insecure."

In *Woods v. Gaar, Scott & Co.*, 93 Mich. 143, 53 N. W. 14, dealing with a chattel mortgage provision almost exactly of the same language as that noticed in *Roy v. Goings*, the Michigan court reached the same conclusion. This view, however, is apparently out of harmony with that of the Nebraska court announced in *Newlean v. Olson*, 22 Neb. 717, 36 N. W. 155, 3 Am. St. 286, where, considering a chattel mortgage provision reading, "If the mortgagee shall at any time feel unsafe or insecure they may seize and sell," the court said:

"To justify the mortgagee, . . . in his action in declaring that he feels unsafe and insecure, where there is an implied contract that the mortgagor shall remain in possession, the mortgagor must be about to commit, or has committed, some act which tends to impair the security; and unless such facts exist the right does not become operative."

This view was adhered to in *Case Plow Works v. Marr*, 33 Neb. 215, 49 N. W. 1119. However, we shall not attempt at this time to determine which of these views we would follow, but content ourselves with simply expressing the opinion that the facts in this case, as disclosed by the findings, warranted the learned trial court in concluding that appellant acted without reasonable cause in commencing his action and causing seizure of the property before maturity of the debt; from which, together with the fact of the tender of full amount of the principal and interest due on the note at the time of its maturity by respondents, it results that appellant is not entitled to his costs in the foreclosure action.

Apparently this court has had occasion to deal with the question of the commencement of foreclosure and seizure of chattel mortgaged property before maturity of the debt secured thereby, in but one instance—that of *Slyfield v. Willard*, 43 Wash. 179, 86 Pac. 392. While the plaintiff's claimed right to so act before maturity of the debt was there sustained, it is manifest that the defendants were themselves responsible for the danger which threatened the mortgaged property. Such is not the case here.

We conclude that the judgment must be affirmed. It is so ordered.

CROW, C. J., GOSE, and MORRIS, JJ., concur.

CHADWICK, J. (dissenting)—I dissent from the judgment of the court. Appellant had reasonable cause to believe that the mortgaged property would be destroyed, lost, or removed, if left in the keeping of the mortgagor. Whatever may have been the character of the respondents at the time the mortgage was made, the record and findings of the court make it certain that at least one of the respondents was keeping company with people of ill-repute, who were suspected of "rustling" stock. Appellant had been told by one Guyer that Charles Haley, a reputed rustler and companion of one of the respondents, was about to make a secret trip into British Columbia. The mother of respondents told appellant that she did not want to see him lose his money; that respondents were going to beat him out of it; that they intended to run the horses out of the country. Appellant sought counsel and assistance of a neighbor, Art Smith, who told him from what he had seen of the respondents that he believed that one of them was a horse thief. It further appears that appellant and Henry Goetjen had a personal altercation and that respondent in his anger told appellant that he would beat him out of the debt that was owing to him. Furthermore, the court below found that "at the time of the commencement of this action the plaintiff honestly and in good faith believed

that he would lose his property and his debt, and that the mortgaged property would be destroyed, lost or removed if he delayed his action until the maturity of said note."

The court below and this court have assumed to try out the case as if it were our duty to find whether the property would have been in fact lost or destroyed if it had been left in the hands of the respondents. The court below found that appellant's honest belief "was based upon gossip, rumor, hearsay, and the general reputation of the community." If honest belief cannot be founded upon rumor and hearsay and general reputation, I do not know how it may be founded.

The effect of the court's decision is to deny a right to take property in satisfaction of a mortgage before the maturity of the debt, for it may be assumed that a dishonest mortgagor would swear that he did not intend to take or dispose of the property. Against such assertion, however well founded and honest the belief of the mortgagee may be, he would be powerless to avail himself of the privileges of the statute. I admit that there must be some grounds for "reasonable cause to believe." An arbitrary taking will not satisfy the law, but if there be some ground and the court can find that there was "reasonable cause to believe," a mortgagee should have his remedy.