NEBRASKA STATE BANK, A CORPORATION, APPELLANT, V. CHARLES R. DUDLEY ET AL., APPELLEES.

252 N. W. 2d 277

Filed March 30, 1977. No. 40866.

Norris G. Leamer, for appellant.

O'Brien, Galvin & O'Brien, Donald E. O'Brien, and James R. Peterson, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

This is the second appearance of this replevin action before this court. The first case was reversed and remanded for a new trial because of erroneous jury instructions. Nebraska State Bank v. Dudley, 194 Neb. 1, 229 N. W. 2d 559 (1975). The issue submitted to the jury on plaintiff's right of possession was whether the note was in default and, if not, whether bank properly deemed itself insecure because of acts of the defendants which would impair the security. The jury found right of possession to be in the defendants. Bank appeals. We affirm.

Defendants were owners of a drugstore in South Sioux City, Nebraska. On November 15, 1966, bank loaned defendants $16,583.89, evidenced by a note, and secured by a security interest in the inventory and equipment in defendants' store. On November 6, 1967, defendants borrowed an additional $5,000. A renewal note in the principal amount of $19,830.02 was executed. This note is in the following form:

134

United States Check Book Co., Omaha

**NOTE**

COLL. 5A
OFF: FT  NEW 5000  RENEWAL # 830  OLD No. C6572

(#2)

$ 9830

No. 012-522

South Sioux City, Nebr., Nov. 6 _____ 1967

Charles R. Dudley (NAME)

Dec. 20, 1965

Nine ten Thousand Eight Hundred Thirty and no/100 _____ Dollars

the order of the NEBRASKA STATE BANK, at the NEBRASKA STATE BANK, South Sioux City, Nebraska.

with _____ per cent interest per annum from _____ date

_____ payable _____ annually.

Principal and interest to bear interest at the rate of nine per cent per annum from the time it becomes due.
The makers and endorsers of this note hereby severally waive protest, demand, notice of non-payment and benefit of all the exemption laws of the State of Nebraska, and each of us hereby personally charge our own separate estate with the payment of this note, including that now owned, and that hereafter acquired.

Due. _____

Payable _____

P.O. 2515 Nebr. Ave. SSC

Security _____ 11-15-66

Charles R. Dudley
Delores S. Dudley

EX. NO. 4
CLERK 2-2-76
CASE NO. 8568

Except for the amount and date, this note differed from the original in four particulars. The original note, instead of "Jan 20, 1969" read "Installments." The rate of interest was 6½ instead of 7½. The original note read "Payments of $250.00 which Includes Interest Beginning Dec 20, 1966." The other difference was the original note was signed only by Chas. R. Dudley.

Defendants made monthly payments on the note until May 22, 1972. At that time there was a balance owing of $11,161.86. The replevin action was filed June 7, 1972, or 13 days before the next payment would be due if the note was to to paid out in installments. On that date, the sheriff took possession of the property under an order of replevin. Plaintiff also exercised its right of set-off against defendants' business checking account, which contained $1,054.82. The property replevined was appraised at $10,230. A sale of it by the bank netted approximately $3,500.

By agreement of the parties, the only issue tried was who had the right of possession at the time of the commencement of the action. The security agreement provided: "* * * upon default Secured Party shall have the immediate right to the possession of the Collateral." It also defines "default" and further provided: "UPON SUCH DEFAULT and at any time thereafter, or if it deems itself insecure, Secured Party may declare all Obligations secured hereby immediately due and payable and shall have the remedies of a secured party under the Nebraska Uniform Commercial Code."

Defendants' landlord was a director of the bank. Defendants had been given notice to vacate because the landlord had sold or was in the process of selling the building. The bank's evidence indicates the defendants were $465 in arrears on rent for the drugstore at the time of the replevin, but defendants had a dispute with the landlord.

Defendants had requested another loan to facilitate

their move to a different location. Two or three meetings took place between bank officers and Mrs. Dudley, but no new loan was made. The bank requested additional security but no decision had been made. Plaintiff made no demand for payment of the note or for possession of the security before filing the replevin action.

Defendants had made the required $250 monthly payments through May 22, 1972. Although the note was ostensibly due January 20, 1969, the bank had continued to accept the installment payments. One of the bank's witnesses testified that an executive vice president who had authority to do so had told him he was of the opinion the note would be continued so long as the $250 payments were made. The note was not presented for payment on January 20, 1969, or at any time thereafter.

It is bank's position the note by its terms was due January 20, 1969. It contends that at any time thereafter, regardless of payments, it had the right to commence an action to replevin its security. It was not necessary to first make demand on the defendants for payment or possession. The difficulty with bank's position is that its own evidence raised an issue as to whether or not the note had been extended. Donald Kuhl, a former vice president of the bank, testified the officer who made the loan had said the note could be continued so long as the $250 payments were made.

The note, which the present one renewed, did not list a due date, but provided solely for installment payments. The defendants' evidence raised a jury issue as to whether or not the bank agreed to continue the note in effect so long as the installment payments were made. Because of this arrangement, the jury could find the defendants were not in default on the obligation at the time the replevin action was filed without notice.

The note would appear to be somewhat ambiguous.

"Jan 20, 1969" was inserted in the blank intended for the period of time after which the note would be due. The blank indicating the due date was not filled in. The terms of the payment are also ambiguous. The note does not specifically mention monthly payments. For "Payable" it states "Payments of 250.00 inc interest beginning Nov 20, 1967." Further, the note states that interest is payable annually, and yet the payments of $250 include interest.

In Richards v. Bycroft, 197 Neb. 478, 249 N. W. 2d 743 (1977), we stated: "The interpretation given a contract by the parties themselves while engaged in the performance of the contract is one of the best indications of the true intent of the parties and, ordinarily, that construction of the contract should be enforced."

Here, the bank accepted monthly payments on the obligation without question until the replevin action. On August 3, 1971, it filed a statement with the county clerk that the original financing statement between it and Charles R. Dudley was still effective. It seems unusual that bank would permit regular monthly payments on a note for more than 3 years after its due date without making a demand for payment unless some agreement for that arrangement existed. If the bank did not intend to continue the arrangements which had continued for more than 3 years, at the very least it should have made a demand for payment of the amount due on the note or for the surrender of the collateral.

Bank argues in a circle by insisting that no demand is necessary if a note is unpaid after its due date. The due date was one of the issues to be decided to determine whether or not the Dudleys were in default. This issue was decided adversely to the bank.

Bank argues: "Even if the note is not in default, the Security Agreement clearly provides 'if it deems itself insecure, secured party may declare all obli-

gations secured hereby immediately due and payable and shall have the remedies of a secured party under the Nebraska Uniform Commercial Code.' Section 9-501 U.C.C. provides a secured party has those rights 'provided in the security agreement' in addition to those rights provided by the U.C.C. This 'insecure clause' is a right provided by the agreement and is long recognized in Nebraska. J. I. Case Plow Works v. Marr, 33 Neb. 215, 49 N. W. 1119; * * *.''

Section 9-501, U.C.C., provides remedies when a debtor is in default under a security agreement. Bank's difficulty is the question as to whether or not the Dudleys were in default was the issue in the case.

The first opinion herein, Nebraska State Bank v. Dudley, 194 Neb. 1, 229 N. W. 2d 559 (1975), cited J. I. Case Plow Works v. Marr, 33 Neb. 215, 49 N. W. 1119, and stated: ''A clause in a chattel mortgage providing that the mortgagee may, at any time he feels insecure, treat the debt as due and take and sell the property, will not authorize the seizure and sale of the property unless the mortgagor is about to do, or has done, some act which tends to impair the security.'' This same rule applies to the security interest herein.

There is no merit to bank's contention the court should have directed a verdict for it at the close of the evidence. The evidence was sufficient to raise a question as to whether or not the defendants were in default on the obligation covered by the security. This issue was properly submitted to the jury. The further question as to whether or not, if the defendants were not in default, the plaintiff had the right to deem itself insecure also was a jury question. The jury resolved both these issues against the plaintiff and determined the right of possession was in the defendants.

The final question raised by the bank is that the court erred in failing to instruct the jury that no de-

mand for payment was necessary before filing the replevin action. The court properly instructed the jury that in the event of a default, no demand for payment is necessary. If we understand the bank's contention, it is that regardless of default no demand for payment was necessary. Bank has failed to produce any authority for its contention, and we can find none.

There is no merit to any of the bank's assignments. The issues were properly submitted to the jury. The judgment herein should be and hereby is affirmed.

AFFIRMED.